

UNIVERSITY OF
SOUTH CAROLINA

March 24, 2021                                  Office of the General Counsel

Chris Lombard
Assistant Director of Claims
Insurance Reserve Fund
1201 Main St., Suite 500
Columbia, South Carolina 29211

Re:     Mary Elizabeth Johns vs. University of South Carolina, Dr. David Snyder
        and Harris Pastides
        Case No.: 2021-CP-40-01315

Dear Mr. Lombard:

        Enclosed please find a copy of the Summons and Complaint in the above-reference
action.  These documents were received on March 24, 2021, to the University of South Carolina,
Office of General Counsel.

        The Plaintiff alleges in 2018 through 2020, she was subjected to discrimination in her
education at the University of South Carolina based on her gender in that she suffered professor-
on-student sexual harassment, sexual grooming, and sexual abuse as a condition of her receipt of
an education at USC.

        Please advise me of the lawyer assigned to represent the University in this matter.

                                Sincerely,

                                Walter H. Parham / NHH

                                Walter H. Parham
                                General Counsel

WHP/mhf

Attachments

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | FIFTH JUDICIAL CIRCUIT |
| | ) | |
| Mary Elizabeth Johns, | ) | Civil Action No.: |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | **SUMMONS** |
| | ) | (Jury Trial Demanded) |
| | ) | |
| University of South Carolina, Dr. David | ) | |
| Snyder, and Harris Pastides, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**YOU ARE HEREBY SUMMONED** and required to Answer the Complaint in this action,

a copy of which is herewith served upon you, and to serve a copy of your Answer to said Complaint

on the subscriber at his Office at 1539 Healthcare Drive, Rock Hill, South Carolina, 29732, within

thirty (30) days from the service hereof, exclusive of the date of such service; and if you fail to

Answer the Complaint within the time aforesaid, judgment by default will be rendered against you

for the relief demanded in the Complaint.

**MCGOWAN, HOOD & FELDER, LLC**

s/Randall Hood
S. Randall Hood (S.C. Bar No.: 65360)
MCGOWAN, HOOD & FELDER, LLC
1539 Health Care Drive
Rock Hill, South Carolina 29732
(803) 327-7800
(803) 324-1483 Facsimile
rhood@mcgowanhood.com

Rock Hill, South Carolina

March 22, 2021

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF RICHLAND | ) | FIFTH JUDICIAL CIRCUIT |
| | ) | |
| Mary Elizabeth Johns, | ) | Civil Action No.: |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | (Jury Trial Demanded) |
| | ) | |
| University of South Carolina, Dr. David | ) | |
| Snyder, and Harris Pastides, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

NOW COMES Mary Elizabeth Johns, by and through her undersigned counsel, and for her

Complaint against the above-named Defendants, alleges as follows:

### SUMMARY

1.      This case involves the sexual harassment, grooming, and abuse of a University of

South Carolina ("USC") student from 2018 to 2020.

2.      In this instance, the complained of acts were carried out by Dr. David Snyder – a

history professor and Faculty Principal of Maxcy College at USC.

3.      Upon information and belief, inappropriate actions by professors regarding students

has been endemic at USC for years.

4.      Numerous abuse of power allegations (by male professors/administrators) have

been levied by female students at USC and upon information and belief, little if anything was done

to prevent such conduct.

5.      Despite having knowledge of prior similar complaints from female students, the

university allowed this type of conduct to continue.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

6.      In this case, Ms. Johns informed a USC mental health counselor of the sexual harassment she endured from Defendant Snyder from 2018 to 2020.

7.      Johns was never advised by this counselor, or any other employee/agent of USC, that Snyder's actions violated Title IX and that Johns had options available to her under the law to curb the conduct.

8.      Again, though Johns specifically went to counseling services at USC and reported the conduct, she was never provided USC's Title IX Policy or informed of a grievance process to stem this married professor's ongoing and unwanted conduct.

9.      USC allows this sexual harassment, grooming, and abuse to continue unabated and those responsible continue to go unpunished.

10.     USC has a duty and responsibility to protect vulnerable students and it failed to uphold that duty in Ms. Johns' case.

11.     USC's failure to live up to this duty resulted in the continual sexual harassment, grooming, and abuse of female students, specifically including Ms. Johns, over a long period of time.

## PARTIES

**Plaintiff**

12.     Mary Elizabeth Johns (hereinafter, "Plaintiff" or "Johns") is a citizen and resident of Richland County.

**Defendants**

13.     Defendant University of South Carolina ("USC") is a South Carolina agency with its primary campus located in Richland County, South Carolina.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

14.     Defendant David Snyder ("Snyder") resides, upon information and belief, in Richland County, South Carolina.  At all times mentioned herein, Snyder was the Faculty Principal of the International House at Maxcy College ("Maxcy") and history professor at USC.

15.     The International House at Maxcy is a USC affiliated living and learning community consisting primarily of international students.

16.     As the Principal of Maxcy (which is an organization within the confines of USC), Snyder has daily access to female students in this resident location.

17.     Defendant Harris Pastides (hereinafter "Pastides") resides, upon information and belief, in Richland County, South Carolina.  At all times mentioned herein, Pastides was the President of USC.

18.     Upon information and belief, USC has been repeatedly investigated by state organizations and law enforcement for allegations of sexual harassment, grooming, and/or abuse by students, athletes, and professors.

**GENERAL ALLEGATIONS APPLICABLE TO ALL DEFENDANTS**

19.     USC has the right or power to direct and control the way its employees and/or agents operate within its organization.

20.     USC has the right or power to direct and control the way its employees and/or agents hire, retain, supervise, and train staff under its employment or agency.

21.     Upon information and belief, USC utilizes third-party entities to provide policies, procedures, and guidance on the manner in which they provide education to students.

22.     USC has non-delegable duties to provide a school president, administrators, and professors with adequate knowledge and training to be able to provide necessary and reasonable educational and non-educational needs to students within its organization.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

23.    Before the events underlying this case, which took place in 2018, 2019, and 2020, employees and/or agents of USC had actual knowledge that inappropriate contact had occurred between multiple professors and students.

24.    This type of illicit relationship between professor and student is well known in the university community and vast amounts of literature has been written about the issue.

25.    Before the events underlying this case took place in 2018, 2019, and 2020, employees and/or agents of USC had actual knowledge that its vulnerable population of students would be subject to abuse and assault if reasonable policies and procedures were not created and implemented and in hiring, supervision, training, and employment of professors/administrators.

26.    Despite this knowledge, and despite knowing some professors had a propensity and the means to sexually harass, groom and abuse students, USC employed and continued to employ them on their campus.

27.    At all times relevant hereto, all USC employees (with respect to the facts alleged herein) acted within the scope of their employment and/or agency while interacting with Plaintiff and/or being aware of interactions between Snyder and Plaintiff.

28.    Universities such as USC have a great responsibility in their hiring and supervision of employees since they are providing care and services to a vulnerable population (particularly since an imbalance of power exists between students and professors).

29.    Upon information and belief, Defendant USC undertook the duty of providing educational services to Plaintiff with the knowledge that Snyder had possibly harassed, groomed, or abused students in the past.

30.    The negligent, grossly negligent, reckless, willful or wanton acts, omissions, and liability of Defendants includes that of their agents, principals, employees, and/or servants, both

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

directly and vicariously, pursuant to principals of non-delegable duty, corporate liability, apparent authority, agency, ostensible agency, and/or *respondeat superior*.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over the claims alleged herein since all actions or inactions took place in Richland County, South Carolina.

32.     Venue in this Court is appropriate as the actions giving rise to Plaintiff's claims occurred in Richland County, South Carolina, and USC's main campus is in Richland County.

## FACTS COMMON TO ALL CAUSES OF ACTION

33.     During the spring and fall semesters of 2018 and the spring semester of 2019, Snyder was the Faculty Principal of Maxcy (administrative capacity) and a history professor at USC.

34.     Upon information and belief, a number of students prior to March 2018 complained of inappropriate conduct by professors at USC amid the existence of an environment that allowed sexual harassment, grooming, and sexual abuse.

## GROOMING

35.     Grooming is the process by which a potential offender draws a victim into a sexual relationship and maintains that relationship in secrecy.

36.     The shrouding of the relationship is an essential feature of grooming.

37.     There are multiple stages that occur during the grooming process.

38.     The grooming offender works to separate the victim from peers, typically by engendering in the victim a sense that they are special and giving a kind of love to the victim that they need.

39.     Grooming is facilitated by an imbalance of power in a relationship.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

40.     In the case of a professor or administrator, it includes someone who is in authority over a student.

41.     They control the student's grades and ability to rise in status (due to grades, etc.) and ability to proceed with their degree.

42.     The offender targets a victim by sizing up the victim's vulnerability among intersections of inequality including but not limited to gender and disability.

43.     Different law enforcement officers and academics have proposed models of the "stages" of grooming.

44.     Since there are a variety of these models, it is best to think of the grooming by offenders as a gradual, calculated process that ensnares victims into a world in which they ultimately become a participant of the sexual abuse.

45.      Snyder had likely groomed other students.

46.     His prey were the female students of USC.

47.     USC is supposed to prevent the type of conduct that was perpetrated and engaged in by Snyder.

48.     USC has a duty to promote an environment free of sexual harassment, grooming and abuse.

**PROFESSOR/ADMINISTRATOR AND STUDENT IMBALANCE OF POWER PROMOTES AND FACILITATES SEXUAL HARASSMENT OF STUDENTS**

49.     Professors wield enormous influence over their students' lives, meaning many students choose not to report abuse because they do not want to jeopardize future opportunities.

50.     As women across the country come forward to share their stories about sexual misconduct, the relationship between faculty and students has emerged as one of the ripest for

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

abuse, with heralded professors quietly wielding major influence over the trajectory of their students' lives.

51.     Professors possess the power to intimidate and abuse students.

52.     The professor is the person who issues grades to students.

53.     The professor wields influence in chosen fields to facilitate the student's progress.

54.     The professor can restrict access to a student's ability to prosper in a chosen field of study.

55.     In many cases, students depend on professors for not only grades but mentorship, recommendations and professional opportunities.

56.     Students pursue a course of study where the goal is to learn from professors, and that didactic relationship exposes them to risk when the professor sees the relationship as an opportunity to promote their own sexual proclivities.

57.     By virtue of their roles, professors and administrators engage in a range of behaviors that exercise power over students, including evaluation as an instructor or supervisor, and provision of recommendations for future educational or employment opportunities in a wide range of other professional contexts.

58.     Professors and administrators are cognizant of the power differential of each of these circumstances, and they are supposed to refrain from misuse of their power.

59.     Whenever possible, professors and administrators should take steps to eliminate any unnecessary negative effects of the power differential.

60.     Given the multiple roles that professors and administrators play (e.g., instructor, academic advisor, mentor), multiple and overlapping relationships with students are common.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

61.    A professor/student relationship calls for vigilance on the part of the faculty member because such relationship presents an increased potential for inappropriate and exploitative outcomes, particularly in light of the power imbalances that exist.

62.    When a professor or administrator finds that their relationship with a student poses potential for concern, they are expected to take steps to remediate the situation through means other than a sexual relationship with a student.

63.    Professor/Administrator and student relationships outside the classroom greatly increase the ability of the faculty member to abuse his or her power and sexually exploit the student.

64.    Voluntary consent by the student in such a relationship is suspect, given the fundamental asymmetric nature of the relationship.

65.    The psychological power conferred by the status differential between professor and student is immense.

66.    There is no situation where it is appropriate for a professor to sexually harass, groom or abuse a student.

## USC'S ADHERENCE (OR LACK THEREOF) TO TITLE IX DUTIES TO PROMOTE ATMOSPHERE FREE FROM SEXUAL HARASSMENT

67.    The USC Board of Trustees is an appointed body.

68.    Its mission is to ensure excellence in the governance of a quality educational program by setting policy, approving the budget, and selecting and evaluating the President.

69.    Policies are adopted by the board of trustees and are the board's primary tool for directing the activities of USC.

70.    In establishing policies, the board recognizes three general duties: formulating educational policies, delegating administrative duties, and appraising impact of policies.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

71.    Questions of proper interpretation of policy or rules should be submitted through normal administrative channels to the President who is responsible to the board for interpreting and applying policies and rules.

72.    The President and those under him ensure the implementation of university-wide practices related to academics, discipline, finance, human resources, communication, maintenance and security.

73.    The President and those under him provide instructional leadership and support to teachers and provide professional development, feedback, and commendations as appropriate and address student and parent concerns under the guidance of university policy.

74.    Title IX is a federal civil rights law passed as part of the Education Amendments of 1972. This law protects people from discrimination based on sex in education programs or activities that receive federal financial assistance.  Title IX states that:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

75.    Title IX applies to any institution receiving federal financial assistance from the Department of Education, including state and local educational agencies.  Educational programs and activities that receive federal funds from the Department of Education must operate in a nondiscriminatory manner.

76.    Also, a recipient may not retaliate against any person for opposing an unlawful educational practice or policy, or because a person made charges, testified, or participated in any complaint action under Title IX.

77.    USC has a Title IX office.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

78.    Title IX of the education amendments of 1972, 20 U.S.C.A. section 1681, et seq.

S.C. Code of Laws section 59-63-110 et seq. was adopted by USC prior to March 2018.

79.    The USC website states the following about its Title IX policy:

These laws, acts and policies are administered by various entities within the university. The brief descriptions below explain how the items relate to interpersonal violence, and the link connects you to the appropriate office for more information.

Title IX

Title IX protects students from gender discrimination, including sexual violence and sexual harassment. The university's Title IX coordinator oversees Title IX related policies and procedures, including complaints, investigations and resolutions.[1]

80.    USC, as part of its Title IX requirements for receiving federal funding, promulgates

policies and procedures to comply with the federal Law.

81.    USC has a sexual harassment policy that was in place in 2018 and 2019 as

illustrated below:

| ADMINISTRATIVE DIVISION EOP Office of Equal Opportunity Programs | POLICY NUMBER EOP 1.02 |
|---|---|
| POLICY TITLE Sexual Harassment | |
| SCOPE OF POLICY USC System | DATE OF REVISION September 20, 2019 |
| RESPONSIBLE OFFICER Director of the Office of Equal Opportunity Programs | ADMINISTRATIVE OFFICE Equal Opportunity Programs |

**Purpose**

The University of South Carolina prohibits sexual harassment and does not condone or tolerate sexual harassment among all members of the university community. Sexual misconduct described in policy EOP 1.05 Sexual Misconduct, Intimate Partner Violence and Stalking is encompassed in the definition of sexual harassment set forth below.

---

[1] https://sc.edu/about/initiatives/safety/stop_sexual_assault/laws_and_policy/index.php

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

**Sexual harassment:** forms of sex or gender discrimination, which is a violation of federal and state law and University of South Carolina policy. Sexual harassment is unwelcome conduct of a sexual nature, sufficiently severe or pervasive that it adversely affects a person's or group's ability to participate in or benefit from academic or employment, programs, services or activities of the university. Sexual harassment may arise between employment supervisors and subordinates, between instructors and students, between peers, or between any of the foregoing persons and individuals conducting business with the university. Examples of conduct that may constitute sexual harassment include, but are not limited to, the following types of unwelcome behavior:

82.     Any USC employee is a mandatory reporter under Title IX.

83.     USC has policies disallowing interpersonal relationships with professors and students.

84.     The Title IX reporting procedure mandates that a USC employee who becomes aware of harassment is obligated to inform the victim of Title IX safeguards, or to report the conduct to a Title IX coordinator or administrative university employee.

85.     The Title IX coordinator speaks with any reporting party or complainant about ANY allegation of inappropriate behavior that would fall under Title IX (including a professor engaging in an inappropriate relationship with a student).

86.     The Title IX coordinator then discusses reporting the offending party's behavior with a complaint to law enforcement or the university (or both).

87.     This should be encouraged and implemented by the Title IX office if there is ANY indication of inappropriate conduct by any professor or administrator at USC.

88.     The Title IX coordinator also encourages and helps provide supportive measures and protective measures to anyone who has been involved or engaged in violative conduct by a professor.

89.     Contemporaneously with assistance to the victim, the title IX coordinator concomitantly files a complaint to start an internal grievance process and investigation of the incident, including a written notice to respondent, gathering information, interviewing witnesses,

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

completing an initial investigation report, and providing a final investigation report which is shared with the parties and the final decision maker.

90.    If the complainant declines to pursue grievance/resolution process, the University still has the duty to investigate and to provide supportive and remedial measures.

91.    An investigator with the university conducts an individualized safety & risk analysis to determine if the offending party (professor) is an immediate threat to the physical health/safety of anyone and the respondent is provided notice and opportunity to appeal.

92.    In this case, all the protections of Title IX and the university policy were denied to Johns.

93.    Ms. Johns began seeing Susan Collins, a counselor affiliated with USC, in 2018 and 2019 in large part due to pressure and harassment by Snyder.

94.    Collins never informed Johns of a Title IX Policy.

95.    Collins never informed Johns that she could file a complaint against Snyder.

96.    The counselor never informed Johns that retaliation was prohibited if she filed a Title IX complaint.

## DEFENDANTS' ACTIONS

97.    Mary Elizabeth Johns originally enrolled at USC in 2005.

98.    Shortly thereafter, she was forced to delay her education as a result of family tragedy.

99.    Johns filed to be readmitted to USC in the fall of 2016.

100.    Unfortunately, that summer her mother was diagnosed with breast cancer.

101.    As a result, she once again postponed her degree to resume a caregiver role.

ELECTRONICALLY FILED - 2021 Mar 22 22:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

102.    When her mother's prognosis began to look better in 2017, Johns returned to USC in the spring of 2018.

103.    She arranged her course schedule for Tuesday and Thursday classes.

104.    During the first week of the semester, she attended office hours for each of her five courses and explained that on Wednesdays (as a result of her familial duties) she could not have a cell phone in the oncology ward and would be slow in returning emails.

105.    Her professors all conveyed their understanding and well-wishes.

106.    Snyder took notice of the difficulties Johns was experiencing and begin to show her unexpected attention.

107.    Upon information and belief, Snyder saw the vulnerability of Johns as someone who had been providing caretaking services for terminally ill family members.

108.    Snyder coaxed Johns to his house under the guise of being a mentor to talk about her grief.

109.    After multiple visits to Snyder's house (under the guise of mentor), Snyder tried to touch and kiss Plaintiff.

110.    During these visits to Snyder's house and prior to his attempts to escalate the relationship (in the period when Johns thought the relationship was mentor/student), she shared that she had been diagnosed with PTSD as a result of end-of-life caregiving for cancer-stricken family members.

111.    Upon information and belief, Snyder saw this mental health disability as a way to worm his way into Johns' life.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

112.    Snyder continued to cajole Johns about entering into a sexual relationship even though he was her professor, he knew she suffered from an emotional disability and knew that his actions could harm the Plaintiff.

113.    Eventually, Johns capitulated to Snyder's requests for sexual interaction and she allowed him to perform oral sex on her.

114.    He also sent her lewd emails.

115.    At the time this was happening, Snyder told Plaintiff that he was not living with his wife and he said their relationship "started ending a long time ago."

116.    Plaintiff, though in an imbalance of power situation, with a professor pursuing her in her chosen degree department, grew increasingly alarmed by Snyder's behavior and cut off contact.

117.    Snyder continued to pursue the Plaintiff.

118.    There are 184 email strings of conversations by Snyder to Johns.

119.    An example of one of 184 email strings sent by Snyder to Johns includes the following:

> ... and that means that if a little fantasy, a little rile playing, or a string of orgasms would help, at least take your mind of things, I'd be delighted.
>
> But I'm also happy to just listen, for however long, to sit with you, to make an omelet. I love you so much that if you need me to slink back into the shadows to find a better place for your healing, I'd do that. I'd be the girlfriend that holds your hair when you'd have too much to drink. And I can be the lover that holds you tenderly, too.

120.    Though Plaintiff asked Snyder to stop contacting her at the time, he continued to reach out to her, most recently in August 2020.

121.    Each of these acts by Snyder is an act or occurrence under the South Carolina Tort claims Act ("SCTCA").

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

122.    Thus, there are 184 occurrences of reckless or grossly negligent behavior by Snyder in his capacity as a USC professor (each email string indicates an occurrence).

123.    Plaintiff told her USC counselor repeatedly about instances of a USC administrator (Snyder was Faculty Principal of Maxcy) propositioning her and/or pursuing her sexually.

124.    Every time she told the counselor and the counselor did not advise her on Title IX policies is a separate occurrence under the South Carolina Tort Claims Act.

125.    The last time Snyder sent an email was the last act that constituted an act or occurrence under the South Carolina Tort Claims Act for statute of limitations purposes.

126.    The last time Snyder saw Collins and she failed to advise her to file a Title IX Claim against Snyder (or inquire further into the identity of involved professor/administrator) was an act or occurrence under the South Carolina Tort Claims Act for Statute of Limitations purposes.

127.    Johns saw the counselor as late as August 2019.

128.    Every time she saw the counselor and the counselor did not advise her of an administrative remedy, was one more time that Snyder was allowed to continue inappropriately pursuing Plaintiff.

129.    Upon information and belief, Collins' awareness of Snyder's conduct should have put her on notice of his grooming behavior.

130.    By virtue of participating in a Title IX environment and having knowledge that professors can prey on students in a university setting (since they are drawn to students or power imbalance), USC had a duty and obligation to undertake proper investigations into allegations of a professor's sexual misconduct.

131.    The effect of USC's, Snyder's, Collins' and Pastides' actions was: (a) to condone and facilitate an environment of sexual harassment and sexual grooming engaged in by Snyder;

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

(b) to create a retaliatory and hostile environment preventing concerned students from voicing their complaints and being heard, including the Plaintiff; and (c) empowering and emboldening Snyder to engage in even further offensive and abusive conduct.

132.    During grooming and escalation of Snyder's sexual aggressiveness, Plaintiff felt helpless to stop the advances for fear of retaliation by Snyder or USC.

133.    USC receives federal funding.

134.    USC is responsible for providing education to students, including Plaintiff, through (a) oversight and supervision of all University functions, school property and student programs; and (b) the hiring, supervision, management, assignment, control and regulation of individuals who serve as professors, as well as the creation, implementation, and review of policies and procedures promulgated to facilitate an optimal educational experience for students, including the Plaintiff.

135.    USC is also responsible for all policies and procedures within the University.

136.    This charge and responsibility includes supervision and discipline of professors and administrators including, but not limited to, Snyder, Pastides and Collins.

137.    The inappropriate conduct towards Plaintiff occurred while Plaintiff was under the control of Snyder, at times and in areas of the University to which Snyder had access by virtue of his employment.

138.    Upon information and belief, there were multiple instances of inappropriate conduct by Snyder that were known or should have been known by USC (or their agents and/or employees) prior to his sexual harassment, grooming, and abuse of Plaintiff.

139.    But for Defendants' actions, Plaintiff would not have sustained injuries and damages.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

140.    Despite actual knowledge of multiple instances in which unqualified employees, poorly trained employees, improperly supervised employees, and predatory professors were employed and/or assigned to positions within USC, and despite the foreseeable risk that said unqualified employees, poorly trained employees, improperly supervised employees, and potential predatory professors posed, Defendants allowed Snyder to engage in repeated acts of inappropriate contact and abuse.

141.    Defendant USC and Pastides did not have in place, or failed to enforce, adequate, reasonable, and necessary rules, regulations, policies, and procedures which could effectively identify and prevent inappropriate contact and abuse.

142.    At all times relevant hereto, USC and Pastides did not have in place, or failed to enforce, adequate, reasonable, and necessary rules, regulations, policies, and procedures for the investigation, removal of potential abusers or predatory professors in their employ and/or service.

143.    At all times relevant hereto, USC and Pastides did not have in place, or failed to enforce, adequate, reasonable, and necessary rules, regulations, policies, and procedures which provided for reporting potential predatory professors or abusers in their employ or service to the University.

144.    At all times relevant hereto, USC and Pastides failed to have in place proper training for employees (especially counselors) on reporting and following up on Title IX complaints.

145.    As set forth in this Complaint, Defendants USC, Snyder, Collins, and Pastides failed to fulfill their legal duty to protect Plaintiff from inappropriate contact, abuse, and other acts described above.

146.    Despite knowing or having the ability to know of Snyder's propensity to sexually harass, offend, and intimidate students and knowledge of Snyder's grooming of students for sexual

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

abuse, USC, Collins, and Pastides nevertheless: (a) permitted Snyder to continue to be a professor; (b) permitted Snyder to have unsupervised contact with students he harassed; (c) did not report Snyder's acts to USC's Title IX office; (d) did not competently investigate complaints of Snyder's conduct; (e) did not warn and/or disclose to the students, including Plaintiff, any concerns about Snyder; (f) failed to comply with the duties set forth in University policies and procedures and South Carolina law and federal law; (g) were deliberately indifferent to the safety, security and well-being of students at USC, including the Plaintiff; (h) prevented students, including Plaintiff, from receiving an education without a condition of such education being sexual harassment, sexual grooming, and sexual abuse; and (i) promoted school policies that fostered a climate where students, including Plaintiff, were victims of sexual harassment, grooming, and abuse.

## FIRST CAUSE OF ACTION
### (Title IX, 20 U.S.C. § 1681, et seq.)

147.     Plaintiff incorporates all previous allegations as if repeated herein verbatim.

148.     Title IX of the Education Amendments of 1972 requires that "No person… shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance…."

149.     USC had actual notice for decades that it could be liable under Title IX for professor-on-student sexual harassment, sexual grooming, sexual discrimination, and sexual abuse.

150.     At least by 2018, USC (through Johns' notice to her University employed mental health counselor Collins) possessed actual knowledge of Snyder's sexual harassment, sexual grooming, sexual discrimination, and sexual abuse of Johns.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

151.     In 2018 through 2020, Plaintiff was subjected to discrimination in her education at USC based on her gender in that she suffered professor-on-student sexual harassment, sexual grooming, and sexual abuse as a condition of her receipt of an education at USC.

152.     USC failed to take appropriate corrective action, thereby acting with deliberate indifference to Plaintiff's rights and safety in one or more of the following ways: (a) failing to report Snyder's sexual harassment, sexual grooming, and sexual abuse to appropriate authorities; (b) failing to cure or even attempt to cure obvious and known risks to female students at USC; (c) failing to communicate any precautions, directives, or educational materials that might be utilized by a student to report Snyder's behavior to the appropriate person or office; (d) Failing to report Snyder or his behavior to the appropriate person or office at USC.

153.     The deliberate indifference, actions, and/or omissions described above caused Plaintiff to suffer sexual harassment, grooming, and abuse by Snyder in 2018 through 2020.

154.     Title IX requires USC to provide educational opportunity on an equal basis to all students regardless of their gender.

155.     USC failed to comply with Title IX in that despite actual knowledge of professor on student abuse, USC continued to allow Snyder access to students where Snyder was able to carry out his sexual harassment, grooming, and abuse of female students, including Plaintiff.

156.     Each time that Snyder sent an email or contacted Plaintiff, it was another breach of Title IX protections.

157.     Failing to remedy Plaintiff's continued harassment after notice and knowledge of said harassment was a Title IX violation EACH time it occurred.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

158.   USC failed to comply with Title IX in that it failed to ensure that the education provided to female students would be on an equal basis compared to the education provided by USC to male students, specifically including the plaintiff.

159.   20 U.S.C. § 1981 affords Plaintiff a civil cause of action for damages.  42 U.S.C. § 1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 20 USC § 1981.

160.   As a direct and proximate result of the described herein, Plaintiff has sustained severe and permanent bodily injury, sickness and/or disease, including but not limited to sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, panic attacks and as a result thereof she has and will continue to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

**SECOND CAUSE OF ACTION**
(42 U.S.C. § 1983 – Pastides and Snyder)

161.   Plaintiff incorporates all previous allegations as if repeated herein verbatim.

162.   Prior to Plaintiff's abuse by Snyder, Pastides knew or reasonably should have known that USC was harboring predatory professors.

163.   These types of professors/administrators exhibited dangerous propensities and were a threat of harm to female students, including Plaintiff.

164.   Pastides, as the President of USC, was uniquely aware of improper contact between students and professors.

165.   Some professors' propensity to commit acts of sexual harassment, sexual grooming, sexual abuse, or misconduct against female students, including Plaintiff, was well known in the University community.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

166.    Misconduct of professors at USC was reasonably foreseeable to Pastides.

167.    Pastides turned a blind eye to complaints of sexual harassment, sexual grooming, sexual abuse and misconduct, ignored complaints, failed to respond to allegations of misconduct, and acted with deliberate indifference to the rights of female students, including Plaintiff.

168.    Pastides had final policymaking authority and exercised that authority in making decisions that perpetuated and/or allowed the sexual harassment, grooming, and abuse of Plaintiff by Snyder and caused Plaintiff's harm to occur and/or continue.

169.    Plaintiff was deprived of her constitutional liberty and equal protection interests under the Fourteenth Amendment by Pastides creation and promotion of policies, customs, or practices that fostered a climate where female students, including Plaintiff, were left vulnerable to and actually were subject to sexual abuse, sexual grooming, and sexual harassment by Snyder, an agent, servant and/or employee of USC.

170.    Plaintiff was deprived of her constitutional liberty and equal protection interests under the Fourteenth Amendment by Snyder's predilections in sexually harassing, grooming, and abusing female students, including Plaintiff, by virtue of the creation and promotion of policies, customs, or practices that fostered a climate where female students, including Plaintiff, were left vulnerable to and actually were subject to sexual abuse, sexual grooming and sexual harassment by Snyder, an agent, servant and/or employee of USC.

171.    The conduct of Pastides and Snyder was arbitrary and offensive, shocking the conscience and interfering with female students', including Plaintiff's, rights and liberties granted by the Constitution and protected by law.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

172.     42 U.S.C. § 1983 affords Plaintiff a civil cause of action for damages.  42 U.S.C. § 1988 identifies damages, court costs, litigation expenses and attorney's fees as within the remedies available in an action brought pursuant to 42 USC § 1983.

173.     As a direct and proximate result of Pastides and Snyder's conduct as described herein, Plaintiff sustained severe and permanent bodily injury, sickness and/or disease, including but not limited to sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, panic attacks and as a result thereof, she has and will continue to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

174.     Pastides and Snyder's conduct constituted a violation of trust or confidence, showing complete indifference to or conscious disregard for the safety and well-being of Plaintiff and other female students.

175.     Justice and the public good require an award of punitive or exemplary damages in such a sum as which will serve to punish Pastides and Snyder and to deter like conduct in the future.

### THIRD CAUSE OF ACTION
(42 U.S.C. § 1983 - USC)

176.     Plaintiff incorporates all previous allegations as if repeated herein verbatim.

177.     USC established, through both action and inaction, a widespread policy, practice or custom of allowing sexual harassment, sexual grooming, sexual abuse, and misconduct to continue to occur without corrective action.

178.     Such policy, practice, or custom includes, but is not limited to: (a) failing to report professor-on-student sexual harassment, sexual grooming, and sexual abuse to offices; (b) failing to cure or even attempt to cure obvious and known risks to female students at USC; (c) failing to

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

communicate any precautions, directives, or educational materials that might be utilized by a student to report inappropriate conduct after having actual knowledge of sexual harassment grooming and abuse; (d) failing to conduct, document, and conclude a competent investigation into the allegations and specific facts brought to light by female students.

179.     USC established such policy, practice, or custom which fostered a climate facilitating sexual harassment, grooming, and abuse of female students, including Plaintiff, which evidences a reckless disregard and/or a deliberate indifference to the consequence that such action or inaction may, and did, have on female students at USC, including Plaintiff.

180.     Pastides had final policymaking authority and exercised that granted authority in making decisions that perpetuated and/or allowed the sexual harassment, grooming, and abuse of Plaintiff by Snyder and caused Plaintiff's harm to occur and/or continue.

181.     Plaintiff was deprived of her constitutional liberty interest and equal protection under the Fourteenth Amendment by USC's creation and promotion of policies, customs, or practices that fostered a climate where female students, including Plaintiff, were left vulnerable to and actually were subject to sexual harassment, grooming, and abuse by Snyder, an agent, servant and/or employee of USC.

182.     USC's conduct was arbitrary and offensive, shocking the conscience and interfering with female students', including Plaintiff's, rights and liberties granted by the Constitution.

183.     42 U.S.C. § 1983 affords Plaintiff a civil cause of action for damages. 42 U.S.C. § 1988 identifies damages, court costs, litigation expenses, and attorney's fees as within the remedies available in an action brought pursuant to 42 USC § 1983.

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

184.    As a direct and proximate result of USC's, Pastides', and Snyder's conduct as described herein, Plaintiff sustained severe and permanent bodily injury, sickness and/or disease, including, but not limited to, sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, panic attacks, and as a result thereof, she has and will continue to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

185.    This conduct constituted a violation of trust or confidence, showing complete indifference to, or conscious disregard for, the safety and well-being of Plaintiff and other female students.

186.    Justice and the public good require an award of punitive or exemplary damages in such a sum as will serve to punish USC, Pastides, and Snyder and to deter like conduct in the future.

### FOURTH CAUSE OF ACTION
(Reckless  Infliction of Emotional Distress – Snyder)

187.    Plaintiff incorporates all previous allegations as if repeated herein verbatim.

188.    Defendant Snyder recklessly inflicted severe emotional distress on Johns by virtue of his actions with her and was certain or substantially certain such distress would result from his conduct.

189.    Defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency.

190.    Defendants' actions caused Johns emotional distress.

191.    The emotional distress suffered by Johns was so severe that no reasonable person could be expected to endure it and the distress it caused to Johns, included, but is not limited to,

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

medical problems, emotional issues, mental anguish and behaviors that are capable of objective diagnosis.

### FIFTH CAUSE OF ACTION
(Negligence/Recklessness/Gross Negligence – All Defendants)

192.    Plaintiff incorporates all previous allegations as if repeated herein verbatim.

193.    Defendants owed Plaintiff a legal duty to act with due care since she was a student at USC.

194.    Snyder owed Plaintiff a duty not to interfere with or harass her in his capacity as a professor.

195.    Collins had a duty of care to provide Plaintiff with information on the Title IX policy at USC.

196.    Pastides and USC owed Plaintiff a duty of care by virtue of her status as a paying student at their University.

197.    That duty arose out of Plaintiff's protected property interests in continuing her education through the University.

198.    All Defendants breached different duties owed to Plaintiff and caused her injuries and damages.

199.    Defendant USC was grossly negligent in supervising Snyder, allowing him to harm Plaintiff through sexual harassment, and creating a hostile environment in which  no reasonable individual could feel safe while acting as an agent of Defendant USC where Snyder was an employee.

200.    Defendants' actions and inactions rose to a level that was reckless, grossly negligent, and willful and wanton amounting to a failure to act with even the slightest care.

201.    As a direct and proximate result of the negligence, recklessness, and gross

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

negligence of USC, Pastides, Snyder and Collins as described herein, Plaintiff sustained severe and permanent bodily injury, sickness and/or disease, including but not limited to sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, panic attacks and, as a result thereof, she has and will continue to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

## SIXTH CAUSE OF ACTION
### (Civil Assault and Battery - Snyder)

202.    Plaintiff incorporates all previous allegations as if repeated herein verbatim.

203.    Johns was placed in reasonable fear of bodily harm by Snyder's conduct.  This is commonly called assault.

204.    Defendant Snyder was a professor who controlled Plaintiffs grades and ability to ascend in history – her determined course of study.

205.    As her professor, Snyder sexually harassed, groomed, and abused Plaintiff.

206.    Defendant committed the actual infliction of unlawful, unauthorized touching on Johns through offensive touching, scaring her, and many others forms of unlawful actions.  This is commonly called battery.

207.    Snyder, without privilege to do so, committed assault and battery upon Plaintiff as described above.

208.    As a direct and proximate result of Snyder's assault and battery, Plaintiff suffered severe and permanent bodily injury, sickness and/or disease including, but not limited to, sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, panic attacks and as a result thereof she has and will continue to experience: (a) physical and mental pain

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315

and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

## SEVENTH CAUSE OF ACTION
### (Breach of Fiduciary Duty – USC (Collins) and Snyder)

209.    Plaintiff incorporates her previous allegations as if fully rewritten herein.

210.    Snyder had a fiduciary relationship with Johns due to his role as professor in her desired field of study.

211.    Collins had a fiduciary relationship with Johns by virtue of her role as Plaintiff's mental health counselor.

212.    Both Snyder and Collins had duties that extended to Johns by virtue of their fiduciary relationship with her.

213.    Snyder sexually harassed, groomed, and abused Plaintiff by virtue of his professorial relationship with Johns.

214.    Collins failed to advise Johns of her right to report Snyder and failed to advise Johns of her right to pursue Title IX recourse.

215.    Both Snyder and Collins breached fiduciary duties to Plaintiff.

216.    Johns suffered specific damages indigenous to this breach of fiduciary duty.

217.    Snyder caused damages flowing from his sexual harassment, grooming, and abuse.

218.    Collins caused damages by virtue of her failure to advise or counsel Plaintiff on her right to pursue a Title IX claim or Title IX resource against Snyder.

219.    By virtue of Snyder and Collins' breach of the fiduciary duties owed to Plaintiff, Johns suffered loss of the ability to stop Snyder's actions sooner and the damages that flow from that loss.  She also suffered sleep disturbance, nightmares, depression, posttraumatic stress disorder, fatigue, social anxiety, and panic attacks, and as a result thereof, she has and will continue

to experience: (a) physical and mental pain and suffering; (b) emotional distress; (c) loss of a normal life; (d) medical and counseling expenses; and (e) lost wages.

WHEREFORE, Plaintiff respectfully prays for judgment against all Defendants for actual, consequential, and punitive damages in an amount to be determined by the jury, for the costs and disbursements of this action, and for such other and further relief as this Court deems is just and proper.

By:  s/S. Randall Hood

S. Randall Hood, Esquire
S.C. Bar No.: 65360
McGOWAN, HOOD & FELDER, LLC
1539 Health Care Drive
Rock Hill, SC 29732
Telephone: (803) 327-7800
rhood@mcgowanhood.com

Attorneys for Plaintiffs

March 22, 2021

Rock Hill, South Carolina

ELECTRONICALLY FILED - 2021 Mar 22 2:13 PM - RICHLAND - COMMON PLEAS - CASE#2021CP4001315