

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| MARY ELIZABETH JOHNS, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. 3:21-01197-MGL |
| UNIVERSITY OF SOUTH CAROLINA, | § | |
| DR. DAVID SNYDER, and HARRIS | § | |
| PASTIDES, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS USC AND PASTIDES'S MOTION TO DISMISS**

## I.   INTRODUCTION

Plaintiff Mary Elizabeth Johns (Johns) brought this action in the Richland County Court of Common Pleas against the University of South Carolina (USC), USC professor Dr. David Snyder (Snyder), and USC interim president Harris Pastides (Pastides) (collectively, Defendants). Johns alleges violation of Title IX by USC; deprivation of her Equal Protection rights under the Fourteenth Amendment by Pastides and Snyder; violation of her Equal Protection rights under the Fourteenth Amendment by USC; reckless infliction of emotional distress by Snyder; negligence by Defendants; civil assault and battery by Snyder; and, breach of fiduciary duty by USC and Snyder. USC, with the consent of Pastides and Snyder, removed the matter to this Court in accordance with 28 U.S.C. § 1332(a)(1).

Pending before the Court is USC and Pastides's motion to dismiss Johns's complaint as to the claims against them under Fed. R. Civ. P. 12(b)(6).  Having carefully considered the motion, the response, the reply, the surreply, the record, and the applicable law, it is the judgment of the Court the motion will be granted in part and denied in part.

## II.     FACTUAL AND PROCEDURAL HISTORY

Johns alleges Snyder sexually harassed her while she was a student at USC.  According to Johns, she informed Susan Collins (Collins), a mental health counselor at USC's Student Health Services, of Snyder's alleged sexual harassment, but Collins failed to report the alleged harassment to USC's Equal Opportunity Programs (EOP) office or inform her of USC's Title IX policy and procedures.  Johns further purports USC and Pastides had actual or constructive knowledge of sexual harassment by faculty members, including Snyder, at USC, but failed to enact policies to prevent future harassment.

As the Court noted above, Johns initiated this action against Defendants in the Richland County Court of Common Pleas, after which USC, with the consent of Pastides and Snyder, removed the matter to this Court.  USC and Pastides then filed the instant motion to dismiss the claims against them pursuant to Rule 12(b)(6).  Johns responded, USC and Pastides replied, and Johns filed a surreply.  The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

## III.    STANDARD OF REVIEW

A party may move to dismiss a complaint based on its "failure to state a claim upon which relief may be granted."  Rule 12(b)(6).  "The purpose of a Rule 12(b)(6) motion is to test the

sufficiency of a complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must have "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pled allegations are taken as true, and the complaint and all reasonable inferences are liberally construed in the plaintiff's favor. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

**IV.     DISCUSSION AND ANALYSIS**

The Court will address USC and Pastides's arguments as to each relevant claim against them in the complaint.

  *A.     Whether the Court should dismiss Johns's claim USC violated Title IX*

USC contends Johns's Title IX claim must be dismissed because she "failed to allege that she gave an appropriate person notice of her sexual harassment claim[,]" Mot. at 3, as required by Title IX. Johns, in response, avers, among other things, "asking the [C]ourt to rule on whether [Collins] was an appropriate person is improper at this procedural stage . . . , [as a] deeper understanding of USC's organization[al] structure is required to understand [Collins's] role [at USC]." Resp. in Opp'n at 5–6.

"Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices' and 'to provide individual citizens effective protection against those practices.'" *Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)). "The statute

was modeled after Title VI of the Civil Rights Act of 1964, which is parallel to Title IX except that it prohibits race discrimination, not sex discrimination, and applies in all programs receiving federal funds, not only in education programs." *Id.* (internal citation omitted). "In the event of a [Title IX] violation, a funding recipient may be required to take 'such remedial action as [is] deem[ed] necessary to overcome the effects of [the] discrimination.'" *Id.* at 288 (quoting 34 C.F.R. § 106.3(a)).

"An institution can be held liable for a Title IX violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 700 (4th Cir. 2007) (en banc) (quoting *Gebster*, 524 U.S. at 290). For example, the Fourth Circuit, in *Jennings*, concluded an Assistant to the Chancellor and legal counsel to a university, who was the university's highest-ranking lawyer and an official responsible for fielding sexual harassment complaints, to be an official with authority to address alleged discrimination and to institute corrective measures under Title IX. *Id.*

Here, as noted by Johns, "asking the [C]ourt to rule on whether [Collins] was an appropriate person is improper at this [motion to dismiss] procedural stage." Resp. in Opp'n at 5 (internal quotations omitted). "Because officials' roles vary among school[s] . . . , deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry[,]" *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999). Instead, the Court may make such a determination at the summary judgment stage after adequate discovery transpires between the parties. Consequently, the Court concludes Johns has pled sufficient facts to state a claim for relief that is plausible on its face. It will therefore deny USC's motion to

4

dismiss Johns' Title IX claim.  Because this issue is dispositive regarding this cause of action, the Court need not address the parties' other related arguments.

> **B.     Whether the Court should dismiss Johns's claim Pastides deprived her Equal Protection rights under the Fourteenth Amendment**

Pastides avers Johns's Fourteenth Amendment claim against him fails because she "has [neglected] to allege any specific acts of misconduct against [him]" and "[i]nstead . . . alleges generally that 'Pastides knew or reasonably should have known that USC was harboring predatory professors' and that 'as the President of USC, was uniquely aware of improper contact between students and professors.'"  Mot. at 8 (quoting Compl. ¶¶ 162, 164).  Johns, in response, argues her complaint "properly alleges the knowledge, deliberate indifference, and causation elements required to state a plausible supervisory liability claim[,]"  Resp. in Opp'n at 13, against Pastides.

"To state a claim under [42 U.S.C. Section] 1983, a plaintiff must allege [1] the violation of a right secured by the Constitution and laws of the United States, and must show [2] that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Additionally, a plaintiff must affirmatively show that a defendant acted personally in the deprivation of the plaintiff's his or her Constitutional rights.  *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).

"[S]upervisory officials may be held liable in certain circumstances for Constitutional injuries inflicted by their subordinates[,]" *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  To establish supervisory liability under Section 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of [C]onstitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to[,] or tacit authorization of[,] the alleged offensive practices; and (3) that there

was an affirmative causal link between the supervisor's inaction and the particular [C]onstitutional injury suffered by the plaintiff.

*Id.* at 799 (internal citations omitted).

Here, Johns's complaint contains facts that plausibly allege the three elements to establish supervisory liability under Section 1983. Johns's allegation that prior to the "abuse by Snyder, Pastides knew or reasonably should have known that USC was harboring predatory professors[,]" Compl. ¶ 162, satisfies the knowledge element. She meets the deliberate indifference element by alleging "Pastides turned a blind eye to complaints of sexual harassment, sexual grooming, sexual abuse and misconduct, ignored complaints, failed to respond to allegations of misconduct, and acted with deliberate indifference to the rights of female students, including [Johns,]" *id.* ¶ 167. And, lastly, Johns meets the causation element by alleging "[a]s a direct and proximate result of Pastides and Snyder's conduct . . . [she] sustained severe and permanent bodily injury[,]" *id.* ¶ 173. Accordingly, inasmuch as Johns's well-pled allegations state a claim for relief that is plausible on its face, the Court will deny Pastides's motion to dismiss this claim.

### C.    *Whether the Court should dismiss Johns's claim USC deprived her Equal Protection rights under the Fourteenth Amendment*

USC reasons Johns is unable to maintain her Fourteenth Amendment claim against it inasmuch as USC is not a person subject to suit under the statute. Johns, in her response, notes she "does not oppose [USC's argument] regarding a [Section] 1983 claim against [it]." Resp. in Opp'n at 9 n.2. Accordingly, the Court will dismiss this claim with prejudice.

### D.    *Whether the Court should dismiss Johns's claims Pastides and USC were negligent*

The Court will address Johns's negligence claims against Pastides and USC separately.

### 1. Whether the Court should dismiss Johns's negligence claims against Pastides

Pastides avers he "is immune from suit for any tort allegedly committed within the scope of his official duties." Mot. at 9. Johns, in her response, opines "she does not oppose [Pastides's argument] regarding a South Carolina Tort Claims Action against [him]." Resp. in Opp'n at 13 n.3. Consequently, the Court will dismiss these claims against Pastides with prejudice.

### 2. Whether the Court should dismiss Johns's negligence claims against USC

Johns's negligence claims against USC constitute negligent supervision of Snyder, negligent retention of Snyder, a negligence claim against USC under the doctrine of respondeat superior for the actions of Collins, and a negligence claim against USC for a failure to protect Johns from foreseeable harm while serving as a student. The Court will discuss each claim separately.

#### a. Whether the Court should dismiss Johns's negligent supervision of Snyder claim against USC

USC argues Johns failed to allege sufficient facts, if proven, that demonstrate she meets the elements required to assert a claim for negligent supervision of Snyder. Specifically, USC contends Johns "does not allege in her [c]omplaint that [Snyder] was on the premises of USC or used USC's chattel when he allegedly harmed [Johns]." Mot. at 11. Johns, to the contrary, argues her complaint alleges "Snyder's misconduct took place 'at times and in areas of [USC] to which Snyder had access by virtue of his employment.'" Resp. in Opp'n at 16 (quoting Compl. ¶ 137).

In *James v. Kelly Trucking Co.*, 661 S.E.2d 329 (S.C. 2008), the South Carolina Supreme Court stated:

> In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervision, or training the employee, or that the

7

>     employer acted negligently in entrusting its employee with a tool
>     that created an unreasonable risk of harm to the public.

*Id.* at 330.

Here, Johns, in her complaint, alleges sufficient facts to state a plausible claim for relief USC "knew or should have known that its employment of [Snyder] created an undue risk of harm to [Johns]." *Id.* For example, Johns alleged, "[u]pon information and belief, there were multiple instances of inappropriate conduct by Snyder that were known or should have been known by USC (or their agents and/or employees) prior to his sexual harassment, grooming, and abuse of [Johns]." Compl. ¶ 138. Accordingly, as Johns's well-pled allegations state a claim for relief that is plausible on its face, the Court will deny USC's motion to dismiss as to this claim.

### b.     *Whether the Court should dismiss Johns's negligent retention of Snyder claim against USC*

USC posits Johns failed to allege sufficient facts, if proven, that establish Johns meets the elements required to assert a claim for negligent retention. In particular, USC contends Johns "has failed to properly allege that USC had any prior knowledge with respect to [Snyder's alleged behavior]." Reply at 9. Johns avers, to the contrary, she "properly plead[] the knowledge element by alleging USC was aware of dangerous propensities to harass students among its existing and prospective staff members including [Snyder,]" and "[d]espite this knowledge, USC chose to retain [Snyder] as a professor and administrator, thereby endangering students like [her]." Resp. in Opp'n at 16.

Negligent retention cases "generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties." *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct. App. 2005). "These elements, from a factual perspective, are not necessarily mutually exclusive, as a fact bearing on one element may also impact resolution on the other element." *Id.* "From a practical standpoint, these elements are analyzed in terms of the number and nature of

8

prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused." *Id.*

Here, regarding the knowledge of employer element, Johns, in her complaint, alleged "[u]pon information and belief, there were multiple instances of inappropriate conduct by Snyder that were known or should have been known by USC (or their agents and/or employees) prior to his sexual harassment, grooming, and abuse of [Johns]." Compl. ¶ 138. And, regarding the foreseeability element, Johns alleged, despite the foreseeability of the risk of harm, USC "allowed Snyder to engage in repeated acts of inappropriate contact and abuse[,]" *id.* ¶ 140. "These well-pled allegations, when taken as true for purposes of this motion to dismiss pursuant to Rule 12(b)(6), properly plead a claim for negligent retention of Snyder. Hence, USC's motion to dismiss will be denied as to this claim as well.

### c. *Whether the Court should dismiss Johns's negligence claim under the doctrine of respondeat superior for the actions of Collins*

USC presents several arguments in support of its position Johns failed to properly assert a negligence claim against it under the doctrine of respondeat superior for the actions of Collins. The Court will address each in turn.

### i. *Whether Johns pled sufficient facts to state a negligence claim against USC for the actions of Collins*

USC maintains inasmuch as Johns failed to identify a legal duty Collins owed her, she is unable to assert a negligence claim against it under the doctrine of respondeat superior. Johns portends Collins's deviation from school policy "supports a negligence claim against her" and USC, as her employer, is responsible under the doctrine of respondeat superior. Resp. in Opp'n at 15.

"[T]o prove negligence, a plaintiff must show: (1) defendant owes a duty of care to the plaintiff; (2) defendant breached the duty by a negligent act or omission; (3) defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) plaintiff suffered an injury or damages." *Doe v. Marion*, 645 S.E.2d 245, 250 (S.C. 2007).

Under South Carolina common law, there is no general duty to act. *Madison ex rel. Bryant v. Babcock Center, Inc.*, 638 S.E.2d 650, 656 (S.C. 2006). "An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Id.* at 656–57 (citations omitted). "Moreover, it has long been the law that one who assumes to act, even though under no obligation to do so, thereby becomes obligated to act with due care." *Id.* (citations omitted).

"The doctrine of respondeat superior rests upon the relation of master and servant." *Lane v. Modern Music, Inc.*, 136 S.E.2d 713, 716 (S.C. 1964) (emphasis modified). "A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was [going] about his master's business and acting within the scope of h[er] employment." *Id.*

In *Babcock Center*, the sole case cited by Johns in support of her position, the Supreme Court of South Carolina reversed a trial court's grant of summary judgment to Babcock Center, a private non-profit corporation based in Columbia, S.C., that provides housing and other services for people with mental disabilities, because it concluded, in part, the center owed a duty to monitor and supervise a client with mental disabilities who was admitted to the center for care and treatment. *Id.* at 656–57. The court recognized although there is generally no duty to act, the client's admission to the center created a special relationship with the client, which created a duty to exercise reasonable care in supervising the client. *Id.* at 657. Regarding the element of breach,

10

the court concluded the "factfinder may consider relevant standards of care from various sources in determining whether a defendant breached a duty owed to an injured person in a negligence case[,]" including "a defendant's own policies and guidelines." *Id.* at 659.

Similarly, Johns's status as a patient of Collins, a mental health counselor employed through USC, created a special relationship with her, which created a duty to exercise reasonable care in counseling and interacting with Johns. And, inasmuch as Johns's avers USC's policies and procedures "disallow[] interpersonal relationships with professors and students[,]" Compl. ¶ 83, and "mandate that a USC employee who becomes aware of harassment is obligated to inform the victim of Title IX safeguards, or to report the conduct to a Title IX coordinator or administrative university employee[,]" *id.* ¶ 84, she has pled sufficient facts to state a plausible claim for breach of this duty.

> ii.     ***Whether this negligence claim is barred because it is based on Collins's failure to follow the requirements of Title IX***

USC argues "to the extent [Johns] alleges any [negligence] cause of action based on the alleged failure of [Collins] to advise her of her rights under Title IX, her claim is limited to a cause of action brought under Title IX." Reply at 7. Johns, in her surreply, avers USC "misinterprets [her] claim[,]" as her complaint alleges Collins "violated USC policy" that "requires an employee learning of sexual harassment to either advise the victim of resources available to her or report the incident to university administrators[,]" which Collins purportedly negligently failed to do. Surreply at 8.

Here, inasmuch as Johns's negligence claim is separate and distinct from her Title IX claim, USC's contention is irrelevant, and this claim will stand.

11

### iii. Whether this negligence claim is barred by S.C. Code Ann. § 15-36-100(B)

USC also argues "[b]ased on the allegations in the [c]omplaint, [Johns]'s claim[] relating to [Collins's] alleged failure to properly advise her is a claim of professional negligence, and South Carolina law requires that [Johns] file an expert affidavit contemporaneously with the filing of her [c]omplaint[,]" which was not done. Reply at 8. Johns, in her surreply, posits her claim is not one of professional negligence, and no expert affidavit was needed when filing her complaint.

Section 15-36-100(B) provides "in an action for damages alleging professional negligence against a professional licensed by or registered with the State of South Carolina and listed in subsection (G)[,]" the plaintiff must file "as part of the complaint an affidavit of an expert witness which must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit." Section 15-36-100(B). Subsection G lists numerous professions, including but not limited to, "professional counselors" and "psychologists[.]" *Id.* § 15-36-100(G).

Here, as recently noted by the Fourth Circuit Court of Appeals, state-law expert affidavit requirements "are inconsistent with the Federal Rules of Civil Procedure, and thus [are] displaced by those rules in Federal Court." *Pledger v. Lynch*, 5 F.4th 511, 514 (4th Cir. 2021). Consequently, Section 15-36-100(B)'s expert affidavit requirement is inapplicable to an action brought in federal court.

### d. Whether the Court should dismiss Johns's negligence claim for failure to protect her from foreseeable harm

USC originally construed Johns's negligence-related allegations in the complaint, which she titled as "Negligence/Recklessness/Gross Negligence[,]" Compl. at 27, to constitute only three claims, which the Court discussed in the preceding paragraphs. Johns, in her surreply, however,

maintains her complaint also asserts a fourth negligence-based claim against USC resulting from its failure to protect her from general foreseeable harm while a USC student.  This negligence-based claim, according to Johns, is separate and distinct from the negligent retention of Snyder claim.

As to this fourth negligence-based claim, Johns alleges USC owed her "a duty to protect [her] from harm that arose from the relationship between [USC] and her as its student."  Surreply at 10.  Although "South Carolina courts have not yet considered this duty[,]" *id.* at 10, Johns argues this Court, at the Rule 12(b)(6) stage, must not dismiss the claim.

Here, inasmuch as USC fails to directly rebut this negligence claim, it will remain pending.

### E.     *Whether the Court should dismiss Johns's breach of fiduciary claim under the doctrine of respondeat superior for the actions of Collins*

USC avers Johns "has failed to identify a recognized fiduciary relationship [between her and Collins] and has further failed to allege facts that would indicate a breach of any fiduciary relationship."  Mot. at 11.  Johns posits, on the other hand, her "fiduciary duty claim is proper because a . . . mental health counselor can form a fiduciary relationship with a student."  Resp. in Opp'n at 17 (emphasis and capitalization modified).  And, Johns

"Whether there is a fiduciary relationship between two people is an equitable issue." *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (S.C. 2003).  "Generally, legal issues are for the determination of the jury and equitable issues are for the determination of the court."  *Id.*

 "A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence."  *Id.* (internal citation omitted). "Thus, to determine whether a fiduciary relationship existed, [a] court must look to the particulars

13

of the relationship between the parties." *Armstrong v. Collins*, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005) (citation omitted).

Nevertheless, "the very nature of the therapist-patient relationship . . . gives rise to a clear [fiduciary] duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being[.]" *Horak v. Biris*, 474 N.E.2d 13, 17 (Ct. Ap. Ill. 1985). Thus, in light of Johns's alleged intimate and confidential relationship with Collins, a mental health counselor, the Court concludes dismissal of this claim is inappropriate at this procedural stage in the litigation. As such, this claim will remain pending as well.

Lastly, USC, in its reply, also argues Johns's claim for breach of fiduciary duty "cannot be based on the requirements of Title IX." Reply at 6–7. But, Johns's fiduciary duty claim is separate and distinct from her Title IX claim. *See generally* Compl. ¶¶ 93, 123, 128, 211, 215 (alleging Johns sought out Collins and informed her of Snyder's propositioning her and pursuing her sexually and she failed in her role as mental health counsellor and allowed the harassment to continue). Accordingly, USC's motion to dismiss will be denied as to this claim, too.

## V.     CONCLUSION

For the reasons stated above, it is the judgment of the Court USC and Pastides's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Specifically, USC and Pastides's motion is **GRANTED** as to Johns's claim USC violated her Fourteenth Amendment rights and her negligence claims against Pastides, and those claims are **DISMISSED WITH PREJUDICE**. USC and Pastides's motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

Signed this 30th day of March 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
