

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| MARY ELIZABETH JOHNS,<br>　　　　Plaintiff, | §<br>§<br>§ | |
| vs. | §<br>§ | Civil Action No. 3:21-01197-MGL |
| UNIVERSITY OF SOUTH CAROLINA and<br>DR. DAVID SNYDER,<br>　　　　Defendants. | §<br>§<br>§<br>§ | |

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
GRANTING IN PART AND DENYING IN PART
SNYDER'S AND USC'S MOTIONS FOR SUMMARY JUGDMENT,
AND SETTING ADDITIONAL MEDIATION DEADLINE**

## I.    INTRODUCTION

Plaintiff Mary Elizabeth Johns (Johns) brought this action in the Richland County Court of Common Pleas against the University of South Carolina (USC), USC professor Dr. David Snyder (Snyder) (collectively, Defendants), and USC interim president Harris Pastides (Pastides). USC, with the consent of Pastides and Snyder, removed the matter to this Court in accordance with 28 U.S.C. § 1331. The parties previously filed a stipulation dismissing Pastides without prejudice.

Against Snyder, Johns asserts a claim under 42 U.S.C. § 1983 asserting sexual harassment in violation of her Equal Protect Rights pursuant to the Fourteenth Amendment, as well as state law causes of action for negligence, breach of fiduciary duty, reckless infliction of emotional distress (RIED), civil assault, and civil battery. Against USC, Johns alleges a violation of Title IX

of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.*, negligence and breach of fiduciary duty.

Pending before the Court are Johns's motion for partial summary judgment, Snyder's motion for summary judgment, and USC's motion for summary judgment.  Having carefully considered the motions, the responses, the replies, the record, and the applicable law, it is the judgment of the Court Johns's motion will be denied, Snyder's motion will be granted in part and denied in part, and USC's motion will be granted in part and denied in part.  The Court will also set an additional mediation deadline.


## II.        FACTUAL AND PROCEDURAL HISTORY

Johns alleges Snyder sexually harassed her while she was a student at USC.  Snyder claims he and Johns engaged in a consensual sexual relationship.

Snyder sent Johns emails from a pseudonymous email address stating he had perceived their conversations as flirtatious.  Johns stated in an email she was unwilling to enter a relationship with a professor.

Over time, Snyder's emails to Johns became increasingly sexually explicit.  Johns sent emails Snyder contends are flirtatious and indicative of consent.  Johns claims Snyder's refusal to respect her initial rejection resulted in a coercive relationship in which she feared the physical, academic, and career consequences of further denying him.

Johns and Snyder met several time at Snyder's house, where they had sexual contact.  On one occasion, Johns alleges Snyder attempted to physically force her to perform oral sex.

According to Johns, she informed Susan Collins (Collins), a mental health counselor at USC's Student Health Services—also with the position title "Coordinator of Trauma Response"—

of Snyder's alleged sexual harassment.  But, Collins failed to report the alleged harassment to USC's Equal Opportunity Programs (EOP) office or inform her of USC's Title IX policy and procedures.

Collins's records reflect that on May 9, 2018, Johns told her "she is involved in an affair with an administrator at USC whose husband is 'someone important' in the Columbia area." Collins's Records May 9, 2018.

Johns attests she believes she never specified the gender of the person who was harassing her during the May 9, 2018, session, and if she did, it was an unintentional use of the incorrect pronoun from which Collins extrapolated other details.  She also alleges she told Collins about Snyder's alleged harassment multiple times during her twelve appointments before she stopped seeing Collins in the summer of 2020, even if Collins failed to reflect her disclosure in the treatment notes.

Johns avers Snyder's alleged harassment impacted her studies, including fears of academic and career reprisals, and deteriorated her mental health.  For example, she states she suffered panic attacks from fear of seeing Snyder on campus.

After each party filed their motions for summary judgment, Snyder responded to Johns, and Johns replied.  Then, Johns responded to USC's and Snyder's motions.  Finally, USC replied. Snyder failed to file a reply.  The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motions.


## III.    STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party has the burden of proving summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing there is a genuine issue for trial.  *Id.* at 323; *see also* Fed. R. Civ. P. 56.

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Rule 56(c)(1)(A).  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).  Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion."  *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).  "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts."  *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987).  The Court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether the Court should grant either Johns's or Snyder's motions as to John's Section 1983 claim against Snyder*

Johns argues the Court should grant her motion and deny Snyder's motion as to her Section 1983 claim because she posits there lacks any genuine issues of material fact that she should prevail.

Snyder contends the opposite, insisting there is no issue of material fact his alleged actions failed to interfere with Johns's educational activities. He posits "any deprivation of educational opportunities was solely the result of Plaintiff's ongoing mental health issues, the death of her grandmother, and the recurrence of her mother's cancer just shortly after returning to USC in 2018." Snyder's Response at 16.

To prevail on a Section 1983 sexual harassment claim, a plaintiff "must show that [the defendant] was a state actor, he harassed her because of sex, and the harassment was sufficiently severe or pervasive to interfere unreasonably with her educational activities." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007).

A sexual harassment victim can be deprived of access to educational opportunities or benefits in at least three different ways. First, "if the harassment . . . results in the physical exclusion of the victim from an educational program or activity"; second, if the harassment "so undermines and detracts from the victim's educational experience as to effectively deny her equal access to an institution's resources and opportunities"; or third, if the harassment "has a concrete, negative effect on the victim's ability to participate in an educational program or activity." *Doe v.*

*Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 275 (4th Cir. 2021) (citing *Jennings*, 482 F.3d at 699) (internal quotation marks omitted) (alterations omitted).

Johns testified that because of Snyder's harassment, she avoided class and faced poor treatment when she did attend.  She also feared Snyder would harm her career prospects.

Even if Johns had other reasons for failing to complete her coursework, a reasonable jury could find Snyder's behavior had "a concrete, negative effect on the victim's ability to participate" in her education.  *See id.* (reasoning plaintiff's alleged worse attendance, worse grades, and avoiding school activities created a genuine issue of material fact that the sexual harassment deprived her of access to educational opportunities by having an concrete, negative effect on her ability to participate).

Because there is evidence in the record to support both John's and Snyder's arguments as to whether Snyder's alleged "harassment . . . interfere[d] unreasonably with her educational activities[,]" *Jennings*, 482 F.3d at 701, the Court disagrees with both Snyder and Johns, and determines the issue of whether Snyder's alleged actions interfered with Johns's educational activities is best decided by a jury.

Thus, the Court will deny John's motion for partial summary judgement, which includes only her Section 1983 sexual harassment claim; and it will deny  Snyder's motions for summary judgment as to this claim.

### B.     Whether the Court should grant Snyder's motion as to Johns's negligence and breach of fiduciary duty claims against Snyder

Snyder avers the Court should grant summary judgment as to Johns's negligence and breach of fiduciary duty claims against him.  Johns's fails to address these claims in her response.

As to the negligence claim, it appears Johns is proceeding on a theory of intentional conduct by Snyder.  *See State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 137 (S.C. Ct. App. 2000)

("[I]n the context of a cause of action alleging an intentional tort, which by definition cannot be committed in a negligent manner, the allegation of negligence is surplusage. Although South Carolina allows alternative pleading, a party may not . . . couch[ ] intentional acts in negligence terms." (citation omitted) (internal quotation marks omitted)).

And, as to the breach of fiduciary duty claim, the Court is unable to find authority holding a professor owes a fiduciary duty to a student.

Therefore, the Court will grant summary judgment as to these claims without opposition.

### C. Whether the Court should grant Snyder's motion as to Johns's RIED claim against Snyder

#### 1. Whether the Court should dismiss Johns's RIED claim because she also brings other tort claims against Snyder

Snyder contends Johns is "barred from seeking relief for a cause of action for [RIED] as there are other remedies available." Snyder's Motion at 9. Johns maintains South Carolina case law fails to support Snyder's interpretation.

Snyder points out that "the concept of bringing an action seeking damages for mental and emotional injury outside the scope of some traditionally recognized tort (e. g. assault, battery, false imprisonment) is a relatively novel one in this country." *Ford v. Hutson*, 276 S.E.2d 776, 777 (S.C. 1981) (internal citations omitted). He adds that the South Carolina Court of Appeals has reasoned "[t]he tort of outrage was designed not as a replacement tort for the existing tort actions. Rather, it was conceived as a remedy for tortious conduct where no remedy previously existed." *Todd v. S.C. Farm Bureau Mut. Ins. Co*., 321 S.E.2d 602, 613 (S.C. Ct. App. 1984), *quashed on other grounds by* 336 S.E.2d 472, 474 (S.C. 1985).

But, as Johns points out, besides the quote above, *Todd* failed to discuss the issue further and the South Carolina Supreme Court neglected to address it whatsoever. Indeed, since *Todd* was

decided, South Carolina courts have affirmed verdicts for plaintiffs on REID claims alongside other tort claims. *See, e.g.*, *Miller v. City of W. Columbia*, 471 S.E.2d 683, 684, 688 (S.C. 1996) (affirmed a plaintiff's verdict from a trial on claims for defamation, intentional infliction of emotional distress, and constructive wrongful discharge).

Altogether, the Court determines South Carolina law fails to support Snyder's contention that a plaintiff is unable to proceed on both an RIED claim and other tort claims. Such an interpretation would effectively declaw the RIED cause of action. If Snyder fears double recovery, the Court can take actions to eliminate any such danger in its jury charges and verdict form without dismissing Johns's RIED claim entirely.

Accordingly, the Court determines Johns's other tort claims fail to bar her RIED cause of action and will deny Snyder's motion as to this argument.

> ### 2.    *Whether the Court should grant Snyder's motion because Johns has failed to show a genuine issue of material fact as to the elements of the claim*

To establish an RIED cause of action, Johns must show

> (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community, (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe so that no reasonable [person] could be expected to endure it.

*Ford*, 276 S.E.2d at 778 (internal citations omitted) (internal quotation marks omitted).

> ### a.    *Whether there is a genuine issue of material fact that Snyder intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct*

Snyder argues the record lacks any evidence he "ever insinuated any negative consequences if [Johns] chose not to correspond with him, visit, him, *quid pro quo* or any other

8

type of language or conversation at any point prior to, during, or after the consensual affair to indicate [Snyder] intentionally or recklessly inflicted emotional distress on [Johns]." Snyder's Motion at 11.

On the other hand, Johns maintains "[a] reasonable jury could certainly infer intent or find recklessness in Snyder's conscious choice to continue sending emails after [she] declined his sexual advances." Johns Response to Snyder's Motion at 6.

The parties dispute whether Snyder understood his relationship with Johns to be consensual. A reasonable jury could determine Snyder pursued Johns even after she rejected his advances such that he knew his conduct was unwanted and would cause her severe distress.

There is thus a genuine issue of material fact as to this element.

> **b.     Whether there is a genuine issue of material fact that Snyder's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community**

Snyder contends his conduct failed to rise to the level of extreme and outrageous because Johns is a thirty-one-year old woman with "extensive life experience[.]" Snyder's Motion at 12. Johns insists enduring sexual harassment from her professor like she experienced constitutes extreme and outrageous behavior.

Johns alleges her relationship with Snyder was coercive, nonconsensual, and at times violent. She contends he sent her a barrage of unwanted, sexually explicit emails. A reasonable jury could find these allegations occurred, and that such behavior is so extreme and outrageous as to be utterly intolerable.

Therefore, there is also a genuine issue of material fact as to this element.

####    c.    Whether there is a genuine issue of material fact that Snyder's actions caused Johns's emotional distress

Snyder posits Johns is unable to show any misconduct caused her emotional distress, because she faced mental health struggles beforehand.  Johns counters she has presented evidence Snyder caused her emotional distress sufficient to satisfy this element.

Johns attested her distress related to Snyder's alleged sexual harassment was "unique" from what she experienced from her family circumstances.  Johns Deposition 171:23–25 ("That distress about being on campus was unique from my stresses around my family's history with cancer.").  For example, she claims she began to fear the educational and career repercussions of Snyder's harassment.

The Court determines a reasonable jury could find Snyder's actions caused Johns distinct emotional distress.  Accordingly, there is thus a genuine issue of material fact as to this element, too.

####    d.    Whether there is a genuine issue of material fact that Johns's emotional distress was severe so that no reasonable person could be expected to endure it

It appears Snyder fails to dispute there exists a genuine issue of material fact as to this element, although, as discussed above he quarrels with whether the distress is attributable to his alleged misbehavior.  For the reasons stated in this order, the Court agrees.  As there is a genuine issue of material fact as to all four elements, the Court will deny Snyder's motion as to John's RIED claim.

###    D.    Whether the Court should grant Snyder's motion as to Johns's assault claim against Snyder

Snyder contends his relationship with Johns was consensual, and thus there is no evidence he "ever threatened, forced, or used violence in any of his communications or physical exchanges"

with her, precluding an assault claim.  Motion at 15.  Johns insists her allegations that Snyder once

forced her to perform oral sex create a genuine issue of material fact that he assaulted her.

To establish an assault claim under South Carolina law, Johns must prove conduct of the

defendant which places the plaintiff in reasonable fear of bodily harm.  *Herring v. Lawrence*

*Warehouse Co.*, 72 S.E.2d 453, 458 (S.C. 1952).

Johns testified Snyder "grabbed [her] by the neck and overpowered [her] and pushed [her]

down on the floor and tried to force [her]."  Johns Deposition 79:13–15.  The Court determines a

reasonable jury could find Snyder assaulted Johns.

Accordingly, there remains a genuine issue of material fact as to this claim.  The Court will

thus deny Snyder's motion as to Johns's assault cause of action.

### E.    Whether the Court should grant Snyder's motion as to Johns's battery claim against Snyder

Similarly, Snyder contends Johns's battery claim fails because there is no evidence he used

any unauthorized violence against her.  As in the previous section, Johns insists she has provided

evidence Snyder physically attempted to force her to perform oral sex, creating a genuine issue of

material fact.

Under South Carolina law,

A battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree; it is unnecessary that the contact be by a blow, as any forcible contact is sufficient. . . . Physical injury is not an element of battery. While there must be a touching, any forcible contact, irrespective of its degree, will suffice.

*Mellen v. Lane*, 659 S.E.2d 236, 244-45 (S.C. Ct. App. 2008).

For the same reasons stated in the previous section, a reasonable jury could find Snyder

liable for civil battery.  There thus also remains a genuine issue of material fact as to this claim.

Therefore, the Court will deny Snyder's motion as to Johns's battery cause of action.

11

**F.      Whether the Court should grant USC's motion as to Johns's Title IX claim against USC**

USC maintains the Court should grant summary judgment as to Johns's Title IX claim because she failed to report any sexual harassment to an "appropriate person" such that liability should be imputed to the school. Johns posits she reported the harassment to Collins, who qualifies as an "appropriate person."

To prevail on her Title IX sexual harassment claim, Johns must show:

(1) she was a student at an educational institution receiving federal funds, (2) she was subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution.

*Jennings*, 482 F.3d at 695.

"An institution can be held liable for a Title IX violation only if 'an official who . . . has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination in the [institution's] programs and fails adequately to respond' or displays 'deliberate indifference' to discrimination." *Id.* at 700 (quoting *Gebster v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). In other words, under *Jennings* and its progeny, such an "appropriate person" need not be able to terminate the alleged perpetrator, but needs to have some degree of control and responsibility such that they can address the allegations. *Id.*

"Because officials' roles vary among school[s] . . . , deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1247 (10th Cir. 1999). As the Fourth Circuit has yet to opine on whether a university therapist is an "appropriate person" for a Title IX claim, the Court will consider some cases in other courts with analogous facts.

12

Johns cites several cases in which a high school counselor was deemed an appropriate person to report sexual harassment such that liability could be imputed to the institution. But, it appears the individuals in those cases generally served as career guidance counselors over minors, rather than psychologists or therapists at universities. *See, e.g.*, *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 372 (5th Cir. 2019) (stating school district had actual knowledge of student-on-student harassment when parent informed school guidance counselor).

On the other hand, there are many cases in which courts have determined counselors and therapists are not "appropriate persons." *See, e.g.*, *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 459 (8th Cir. 2009) (reasoning high school guidance counselor was not an appropriate person, because "[a]fter all, each teacher, counselor, administrator, and support-staffer in a school building has the authority, if not the duty, to report to the school administration or school board potentially discriminatory conduct[,]" but recognizing the possibility a guidance counselor could be an appropriate person in other cases); *Doe v. Bd. of Trustees of the Neb. State Colls.*, 78 F.4th 419, 425 n. 1 (8th Cir. 2023) (Kelly, J., dissenting) (acknowledging all parties' agreement that plaintiff's university therapist was not an "appropriate person" for Title IX purposes);

Here, the Court must consider Collins's position and responsibility within USC to determine whether she has authority to address the alleged discrimination and to institute corrective measures. Collins is a psychologist, and her role is understood to be confidential.

In fact, under USC's EOP policy, it appears Collins qualifies as either a "privileged employee," which are employees who are unrequired to report disclosures of sexual misconduct or interpersonal violence to the Title IX coordinator, or a "confidential resource," which are employees who "can talk to a complainant without revealing any personally identifying information about an incident to the university[,]" EOP Policy at 6. Contrary to what Johns argues

in her response, a student need not request confidentiality from a privileged employee or confidential resource for the requirements to apply. *See id.* at 8 (differentiating the responsibilities of "responsible employees" who must share a report even if a student requests confidentiality).

Indeed, the policy lists the services of USC Student Health Services Counseling and Psychiatry as to "provide[ ] students a safe place to speak privately and confidentially with a trained counselor or psychiatrist." EOP Policy at 10; *cf. id.* at 7 ("When a complainant tells a responsible employee about an incident of prohibited conduct, the complainant has the right to expect the university will take immediate and appropriate steps to investigate what happened[.]").

Johns points to Collins's title of "Coordinator of Trauma Response," but fails to point to any evidence explaining that role. There is no evidence Johns interacted with Collins in that capacity, nor that that role gave her authority to address the alleged discrimination despite her and Johns's confidential relationship.

The Court agrees with the reasoning of the Eighth Circuit in *Plamp* and finds it in line with *Jennings.* It therefore determines any knowledge Collins had of Johns's allegations through their sessions is insufficient to impute liability to USC under Title IX. Collins lacked the ability to institute corrective measures on behalf of USC. Thus, the Court agrees with USC that Collins failed to qualify as an appropriate person under prior case law.

Thus, Johns has failed to show there's a genuine issue of material fact as to her Title IX claim, and the Court need not address USC's other arguments. *See Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta."). The Court will thus grant USC's motion as this claim.

### G.    Whether the Court should grant USC's motion as to Johns's negligence claim against USC

#### 1.    Whether Johns's negligence claim is barred by the statute of limitations

USC contends Johns's negligence claims are barred by the statute of limitations because she filed this suit more than two years after she allegedly reported Snyder's actions to Collins. Johns insists she disclosed Snyder's behavior multiple times, some of which were within the two-year period.

Under the South Carolina Tort Claims Act (SCTCA), Johns had two years to bring her negligence claims against USC before this Court. *See* S.C. Code Ann. § 15-78-110 ("Except as [is inapplicable here], any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered."). Johns filed this suit on March 22, 2021, so the Court considers whether she disclosed any of Snyder's alleged harassment to Collins on or after March 22, 2019.

Because expiration of the statute of limitations is an affirmative defense, USC "bears the burden of establishing that the claims are barred by the statute of limitations, and where the material facts are in dispute, the issue becomes one for the jury." *Columbia Venture, LLC v. Dewberry & Davis*, *LLC*, 604 F.3d 824, 829 (4th Cir. 2010).

In Collins's treatment notes, she mentioned Johns discussing a sexual relationship with a staff or faculty member only once, on May 9, 2018. That is more than two years before Johns brought suit. But, in Johns's deposition, she stated she discussed her relationship with Snyder multiple times with Collins. *See* Johns Deposition 165:10–13 (answering "yes" to question of "[y]ou said you reported that you were being sexually harassed multiple times to Susan Collins; is that accurate?"); 174: 3–6 ("But what I consistently said was, it's almost impossible to get to

15

campus and it is impossible to be here without having panic attacks and she knew about this harassment."). And, as the Court noted earlier, she stopped seeing Collins in the summer of 2020.

True, Johns failed to provide specific dates she spoke with Collins about Snyder. But, it is for the jury, rather than this Court, to decide whether USC has carried its burden of showing Johns failed to disclose Snyder's actions to Collins within the limitations period.

Accordingly, the Court will refrain from granting summary judgment as to Johns's negligence claim against USC based on this argument. The Court need not consider Johns's other arguments as to the statute of limitations. *See Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

### 2.     Whether the Court should grant summary judgment as to Johns's failure to advise negligence claim

As part of her negligence claims, Johns alleges three types of negligence that can be imputed to USC, the first of which is Collins's alleged failure to advise her of Title IX protections.

"To prove h[er] negligence claim, [Johns] must show: (1) [USC, through Collins,] owed h[er] a duty to do or not to do any of the things alleged; (2) [USC, through Collins,] breached this duty; (3) [Johns] was injured, and; (4) [USC, through Collins,]'s breach of duty proximately caused this injury." *Gause v. Doe*, 451 S.E.2d 408, 409 (S.C. Ct. App. 1994).

### a.     Whether Collins owed Johns a duty to advise under South Carolina law

USC avers South Carolina has yet to recognize a duty of a licensed psychologist to inform their patient of Title IX rights and resources. Johns counters Collins admits her duty to students like Johns.

16

"The court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Hurst v. E. Coast Hockey League*, 637 S.E.2d 560, 562 (S.C. 2006).

"Generally, duty is defined as the obligation to conform to a particular standard of conduct toward another. A standard is a model accepted as correct by custom, consent, or authority. Foreseeability of injury, in and of itself, does *not* give rise to a duty." *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 781 (S.C. Ct. App. 2010) (citations omitted) (internal quotation marks omitted).

"At common law, a person ordinarily has no duty to protect another from a harm inflicted by a third party. Usually, a person incurs no liability for failure to take steps to benefit others or protect them from harm not created by his or her own wrongful conduct." *Burnett v. Family Kingdom, Inc.*, 691 S.E.2d 170, 174 (S.C. Ct. App. 2010) (internal citation omitted). "However, an affirmative legal duty can be created by a statute, among other things[.]" *Id.*

USC points to *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 715 (S.C. 2003), in which the South Carolina Supreme Court held an athletic-academic advisor's failure to properly advise a student-athlete of the academic requirements to play baseball failed to give rise to a duty in negligence. The Supreme Court likened the case to "inadequate education cases." *Id.*

But, although Johns does allege detriment to her education, the duty she alleges Collins had is different than in *Hendricks*. Because of the differences between academic advising for athletics and advising a student of Title IX rights, the Court determines *Hendricks* is inapposite.

Collins admits if a student advises her of sexual misconduct by a faculty member, it is her obligation to advise the student of their Title IX resources. Under USC's of EOP policy, "confidential resources" are directed to ensure "a complainant . . . understand[s] that Title IX

17

includes protection against retaliation and that if the complainant pursues disciplinary action against the alleged offender, USC will take steps to prevent retaliation and take strong responsive action if any retaliation does occur."  EOP Policy at 6.

USC insists Collins is a "privileged employee," rather than a "confidential resource," so this provision of the EOP policy is inapplicable to her.  But, the Court is unconvinced the EOP policy intends to limit the requirement of advising a complainant of their rights is limited to confidential resources.  Looking at the policy in its entirety, this appears contrary to its provisions, which fails to articulate such a limitation.  Therefore, the Court need not determine whether Collins is a "privileged employee" or a confidential resource."

Thus, the Court determines Johns could present facts at trial indicative of a duty as a matter of law.

### b.    Whether USC, through Collins, exercised "slight care" as to Collins's failure to advise

USC contends Johns has failed to provide evidence Collins intentionally and consciously failed to act because she was unaware of Johns and Snyder's relationship.  Johns counters there is evidence she disclosed the alleged harassment to Collins.

Under the SCTCA, USC lacks liability for negligence of its employee unless "the responsibility or duty is exercised in a grossly negligent manner."  S.C. Code Ann. § 15-78-60(25). Gross negligence is "the failure to exercise slight care."  *Doe v. Greenville County Sch. Dist.,* 651 S.E.2d 305, 309 (S.C. 2007) (citation omitted) (internal quotation marks omitted).  It "is a relative term, and means the absence of care that is necessary under the circumstances."  *Id.* (citation omitted) (internal quotation marks omitted).

In other words, it is "the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do." *Id.* (citation omitted) (internal quotation marks omitted).

Gross negligence is an issue of mixed law and fact generally ultimately decided by a jury. *See Faile v. S.C. Dep't of Juv. Just.*, 566 S.E.2d 536, 545 (S.C. 2002) ("In most cases, gross negligence is a factually controlled concept whose determination best rests with the jury.").

As discussed elsewhere in this order, there is a genuine issue of material fact as to whether and when Johns disclosed her and Snyder's relationship and the alleged harassment to Collins. If Collins knew of Johns's allegations and failed to advise her in relation to them, a reasonable jury could find she, and thus USC, acted with the absence of even slight care.

The Court thus determines there is a genuine issue of material fact as to whether USC exercised slight care.

### c. *Whether there is a genuine issue of material fact that Collins breached her duty of care*

USC insists Johns has neglected to present evidence Collins breached her duty of care. Johns maintains Collins's failure to advise her of Title IX resources, a violation EOP policy, constituted a breach of the standard of care.

Although Collins denies breaching the standard of care, this is because she attests she was unaware of the alleged sexual harassment. This is contradicted by Johns's testimony.

Taking the evidence in the light most favorable to Johns, a reasonable jury could find Collins was informed of Snyder's misconduct and breached her duty to Johns by failing to inform her of her Title IX resources.

> ### d. Whether Johns's prior knowledge of Title IX destroys causation argument

USC maintains Johns "cannot claim ignorance of Title IX since in her own deposition she admitted she knew of Title IX and how to file a claim based on her own research." USC's Motion at 9. In other words, USC posits any gross negligence by Collins failed to cause Johns's damages. Johns counters that she failed to understand the anti-retaliation protections of Title IX, and thus was impacted by Collins's alleged failure to notify her.

Johns testified she "actually searched how to file a Title IX claim at USC and the search results that [she] got were discouraging. [She] read the University's response to students and realized that going to the Title IX office was not only going to be potentially unsafe if it angered Dr. Snyder, but would also be futile, useless." Johns Deposition 176:20–177:2. Although USC contends this is insufficient evidence to argue "that had Plaintiff known specifically about [anti-retaliation] protection that she would have reported Defendant Snyder[,]" USC's Reply at 7, the Court determines a reasonable jury could find Johns would have made a Title IX claim if properly explained her rights by Collins.

For those reasons, the Court holds there is a genuine issue of material fact as to whether Johns would have sustained her alleged damages but for Collins's failure to advise her of her Title IX rights. The Court will therefore deny USC's motion for summary judgment as to Johns's failure to advise claim.

> ### 3. Whether the Court should grant summary judgment as to Johns's negligent retention claim

USC avers Johns's negligent retention claim fails because it lacked any knowledge of Snyder's wrongdoing. Johns contends USC wrongly insists it is liable only if it had knowledge of harassment by Snyder of someone prior to Johns.

20

> In circumstances where an employer knew or should have known that its employment of a specific person created an undue risk of harm to the public, a plaintiff may claim that the employer was itself negligent in hiring, supervising, or training the employee, or that the employer acted negligently in entrusting its employee with a tool that created an unreasonable risk of harm to the public. As this recitation suggests, the employer's liability under such a theory does not rest on the negligence of another, but on the employer's own negligence. Stated differently, the employer's liability under this theory is not derivative, it is direct.

*James v. Kelly Trucking Co.,* 661 S.E.2d 329, 330–31 (S.C. 2008) (citations omitted).

Negligent retention cases "generally turn on two fundamental elements—knowledge of the employer and foreseeability of harm to third parties. . . . From a practical standpoint, these elements are analyzed in terms of the number and nature of prior acts of wrongdoing by the employee, and the nexus or similarity between the prior acts and the ultimate harm caused." *Doe v. ATC, Inc.*, 624 S.E.2d 447, 450 (S.C. Ct. App. 2005).

These cases "will ordinarily be determined by the factfinder, and not as a matter of law." *Id.* (citations omitted). "Nevertheless, the court should dispose of the matter on a dispositive motion when no reasonable factfinder could find the risk foreseeable or the employer's conduct to have fallen below the acceptable standard." *Id.*

As to the knowledge element, for the reasons stated in the discussion of Johns's Title IX claim, above, the Court is unable to impute Collins's alleged knowledge of Snyder's behavior to USC. Indeed, as explained above, Collins served as a privileged employee. Thus, her role mandated she refrain from disclosing any report from Johns to the university.

Thus, the Court is unable to determine there is a genuine issue of material fact that USC knew or should have known of Snyder's misconduct.

Because the knowledge element is unmet, the Court need not consider foreseeability. *See Karsten*, 36 F.3d at 11 ("If the first reason given is independently sufficient, then all those that

follow are surplusage; thus, the strength of the first makes all the rest dicta.").  The Court will thus grant summary judgment as to John's negligent retention claim.

### 4.    Whether the Court should grant summary judgment as to Johns's negligent supervision claim

As an initial matter, the parties disagree over the applicable elements of this cause of action.

According to USC, an employer may be liable for negligent supervision if the employee intentionally harms another when he: (1) is on the premises of the employer or using a chattel of the employer; (2) the employer knows or has reason to know of the ability to control the employee; and (3) the employer knows or should know of the necessity and opportunity for exercising control. *See Degenhart v. Knights of Columbus*, 420 S.E.2d 495, 496 (S.C. 1992) (utilizing this framework).

On the other hand, Johns posits that in cases when the bad actor is acting within the scope of his employment, negligent supervision liability attaches when an employer "knew or should have known that its employment of a specific person created an undue risk of harm to the public[.]" *James*, 661 S.E.2d at 330.  It contends the Court should use a traditional negligence analysis.  *See Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 237 (S.C. 2002) (using the traditional elements of duty, breach, causation and damages to consider a negligent supervision claim).

Under either parties' proposed framework, Johns's claim fails for the same reasons as her negligent retention claim.  Namely, Johns is unable to present evidence USC knew or should have known Snyder presented harm to the public, and thus was aware of the necessity to exercise control over him.  Accordingly, the Court will grant summary judgment as to Johns's negligent supervision claim, too.

### H. Whether the Court should grant USC's motion as to Johns's breach of fiduciary duty claim against USC

#### 1. Whether Johns's breach of fiduciary duty claim is barred by the statute of limitations

As discussed above in relation to Johns's negligence claims, there is a factual dispute over whether Johns reported the alleged harassment to Collins within the limitation period. Accordingly, the question of whether Johns's breach of fiduciary duty claim is barred by the statute of limitations is a question for the jury.

#### 2. Whether Collins breached a fiduciary duty to Johns

##### a. Whether Johns's prior knowledge of Title IX bars her breach of fiduciary duty cause of action

For the reasons explained above, there is a genuine issue of material fact whether Johns's would have acted differently had she known about the anti-retaliation protections of Title IX. Therefore, whether Johns's prior knowledge of Title IX precludes her claim is also a question for the jury.

##### b. Whether Collins's fiduciary duty to Johns included advising about Title IX

USC avers Collins's fiduciary duty fails to extend to assisting Johns in filing a Title IX claim. Johns, in turn, contends the case law cited by USC is inapposite.

"A confidential or fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Hendricks*, 578 S.E.2d at 715 (internal citation omitted). "Thus, to determine whether a fiduciary relationship existed, [a] court must look to the particulars of the relationship between the parties." *Armstrong v. Collins*, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005) (citation omitted).

The existence of a fiduciary relationship is a question of law for the court, but whether a fiduciary duty has been breached is generally a question of fact for a jury to determine.  *Spence v. Wingate*, 716 S.E.2d 920, 927 (S.C. 2011).

As the Court previously reasoned in its order on USC and Pastides's, motion to dismiss, "the very nature of the therapist-patient relationship gives rise to a clear fiduciary duty on the therapist's part to engage only in activity or conduct which is calculated to improve the patient's mental or emotional well-being."  *Johns v. Univ. of S.C.*, Civil Action No. 3:21-01197-MGL, 2022 WL 960285, *7 (D.S.C. Mar. 30, 2022) (citation omitted) (alterations omitted).

To support its argument Collins's fiduciary duty fails to extend to advising students of Title IX protections, USC points to South Carolina case law holding "this state has not found that medical negligence or malpractice will support a cause of action for breach of fiduciary duty." *Wogan v. Kunze*, 623 S.E.2d 107, 119 (S.C. Ct. App. 2005).

In *Wogan*, the plaintiff alleged several causes of action against doctors for failing to file Medicare claims on behalf of her deceased husband.  *Id.* at 110.  The court of appeals upheld the trial court's dismissal of the negligence claims, reasoning "[e]ssentially, Ms. Wogan [wa]s asserting an action for violation of the Medicare Act under the rubric of a state law claim."  *Id.* at 117.

The court then reasoned the breach of fiduciary duty allegations in that case were "restatements of the basic charges raised in the medical negligence or malpractice cause of action in the complaint."  *Id.* (distinguishing cases that recognized a fiduciary duty for doctor to maintain confidentiality and to refrain from using undue influence in a sale of land).

Here, like in *Wogan*, Johns's fiduciary duty claim parrots the allegations of her negligent failure to advise claim.  Unlike in *Wogan*, however, the record lacks any suggestion Johns is

24

attempting to repackage a doomed federal law claim, namely the Title IX claim. Indeed, in other cases, the South Carolina Court of Appeals has considered negligence and breach of fiduciary duty claims together, indicating an understanding that the two claims often contain overlapping allegations and elements. *See, e.g.*, *Smith v. Hastie*, 626 S.E.2d 13, 16 (S.C Ct. App. 2005) ("We therefore hold Smith presented adequate evidence on the merits of her claims for negligence and breach of fiduciary duty.").

This argument thus fails.

USC also posits *Wogan* stands for the proposition that "the failure of a fiduciary to advise or offer assistance in filing any sort of claim does not amount to a breach of a fiduciary duty." USC's Motion at 26. But once again, USC takes *Wogan*'s holding too far.

*Wogan* merely stood for the proposition that a plaintiff is unable to raise a breach of fiduciary duty claim that mimics a federal law claim for which a private right of action is absent. USC makes no such argument here.

Accordingly, the Court determines Collins's duty to inform of Title IX resources is actionable under a claim for breach of fiduciary duty. Thus, because there is a genuine issue of material fact that Collins breached a standard of care owed to Johns, the Court will deny USC's motion as to Johns's breach of fiduciary duty claim.


## V.    CONCLUSION

For the reasons stated above, it is the judgment of the Court Johns's motion for partial summary judgment is **DENIED**; Snyder's motion for summary judgment is **GRANTED** as to Johns's negligence and breach of fiduciary duty claims against him and **DENIED** as to Johns's other claims against him; and USC's motion is **GRANTED** as to Johns's Title IX, negligent

supervision, and negligent retention claims against it and **DENIED** as to Johns other claims against it.

Therefore, the claims that remain are Johns's Section 1983, RIED, assault, and battery claims against Snyder, and her negligent failure to advise and breach of fiduciary duty claims against USC.

Finally, in light of this order, the Court directs the parties to undergo an additional mediation no later than April 1, 2024.

**IT IS SO ORDERED.**

Signed this 30th day of January 2024, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
