

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| MARY ELIZABETH JOHNS, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:21-01197-MGL |
| | § | |
| UNIVERSITY OF SOUTH CAROLINA and | § | |
| DR. DAVID SNYDER, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
DENYING USC'S MOTION FOR RECONSIDERATION**

## I.    INTRODUCTION

Plaintiff Mary Elizabeth Johns (Johns) brought this action in the Richland County Court of Common Pleas against the University of South Carolina (USC), former USC professor Dr. David Snyder (Snyder) (collectively, Defendants), and then-USC interim president Harris Pastides (Pastides). USC, with the consent of Pastides and Snyder, removed the matter to this Court in accordance with 28 U.S.C. § 1331. The parties previously filed a stipulation dismissing Pastides without prejudice.

At this stage of the case, Johns's remaining causes of action against Snyder are a claim under 42 U.S.C. § 1983 asserting sexual harassment in violation of her Equal Protection Rights pursuant to the Fourteenth Amendment, as well as state law causes of action for reckless infliction of emotional distress (RIED), civil assault, and civil battery. Against USC, her claims for negligent failure to advise and breach of fiduciary duty remain.

Pending before the Court is USC's motion for reconsideration of its order granting in part and denying in part USC's motion for summary judgment. Specifically, USC asks the Court to grant summary judgment as to the remaining claims. Having carefully considered the motion, the response, the record, and the applicable law, it is the judgment of the Court USC's motion will be denied.

## II.     FACTUAL AND PROCEDURAL HISTORY

Johns alleges Snyder sexually harassed her while she was a student at USC. Snyder claims he and Johns engaged in a consensual sexual relationship.

According to Johns, she informed Susan Collins (Collins), a mental health counselor at USC's Student Health Services—also with the position title "Coordinator of Trauma Response"—of Snyder's alleged sexual harassment. But, Collins failed to report the alleged harassment to USC's Equal Opportunity Programs (EOP) office or inform her of USC's Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq.* (Title IX), policy and procedures.

Collins's records reflect that on May 9, 2018, Johns told her "she is involved in an affair with an administrator at USC whose husband is 'someone important' in the Columbia area." Collins's Records May 9, 2018.

Johns attests she believes she never specified the gender of the person who was harassing her during the May 9, 2018, session, and if she did, it was an unintentional use of the incorrect pronoun from which Collins extrapolated other details. She also alleges she told Collins about Snyder's alleged harassment multiple times during her twelve appointments before she stopped seeing Collins in the summer of 2020, even though Collins failed to reflect her disclosures in the treatment notes.

The Court previously issued an order granting in part and denying in part summary judgment as to Johns's claims against USC. More specifically, the Court granted summary judgment as to Johns's Title IX, negligent supervision, and negligent retention claims against USC, and denied summary judgment as to her negligent failure to advise and breach of fiduciary duty claims.

After USC filed this motion for reconsideration, asking the Court to grant summary judgment as to the remaining claims against it, Johns responded. USC failed to file a reply. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate the motion.

### III.    STANDARD OF REVIEW

Although the parties both cite the standard for reconsideration under Federal Rule of Civil Procedure 59(e), because the Court has yet to issue final judgment, the motion is properly considered under Rule 54(b). *See* Fed. R. Civ. P. 54(b) (explaining it applies to "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties").

Under Rule 54(b), a nonfinal order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."

"[T]he discretion Rule 54(b) provides is not limitless." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). "The law-of-the-case doctrine provides that in the interest of finality, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Id.* (internal quotation omitted).

The Court, therefore, may deviate from this principle of finality to reconsider an order under Rule 54(b) only when "(1) a subsequent trial produc[es] substantially different evidence; (2) [there is] a change in applicable law; or (3) [there is] clear error causing manifest injustice." *U.S.*

3

*Tobacco Cooperative Inc. v. Big South Wholesale of Virginia, LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (internal quotation marks omitted) (explaining this standard "closely resembles" the standard under Rule 59(e), which applies after the entry of judgment).

### IV.    DISCUSSION AND ANALYSIS

As an initial matter, USC fails to aver new evidence or a change in law, so it appears it argues the Court should reconsider based on "clear error causing manifest injustice." *Id.*

> **A.    Whether the Court should reconsider its denial of summary judgment as to Johns's negligent failure to advise claim against USC**
>
> > **1.    Whether Johns's negligent failure to advise claim is barred by the statute of limitations**

USC contends the Court erred in holding a genuine issue of material fact exists as to whether Johns's negligent failure to advise claim is barred by the statute of limitations. Johns insists USC improperly attempts to "sneak[] in a whole new substantive motion under the guise of seeking to 'alter or amend' an existing order." Response at 2.

As the Court previously discussed, under the South Carolina Tort Claims Act (SCTCA), Johns had two years to bring her negligence claims against USC before this Court. *See* S.C. Code Ann. § 15-78-110 ("Except as [is inapplicable here], any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered."). Johns filed this suit on March 22, 2021.

In its previous order, the Court reasoned if Johns disclosed any of Snyder's alleged harassment to Collins on or after March 22, 2019, she would be within the statute of limitations as to those disclosures.

In response, USC contends—for the first time—all alleged failure of Collins to advise Johns together constituted a single occurrence under the SCTCA. Because South Carolina has

4

rejected the continuous tort doctrine except in limited circumstances such as nuisance, USC reasons, a single occurrence beginning before the limitations period is barred. USC then undertook an analysis of SCTCA occurrence doctrine to support its argument.

> The so-called "continuous treatment" rule as generally formulated is that if the treatment by the doctor is a continuing course and the patient's illness, injury or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the doctor for the particular disease or condition involved has terminated—unless during treatment the patient learns or should learn of negligence, in which case the statute runs from the time of discovery, actual or constructive.

*Harrison v. Bevilacqua*, 580 S.E.2d 109, 112 (S.C. 2003). But, as USC notes, South Carolina generally refrains from applying the doctrine. *See id.* at 115 ("We decline to adopt the continuous treatment rule or the doctrine of continuing tort.").

But, as Johns points out, the issue of occurrences, which concerns caps on liability, is separate from the statute of limitations. *Compare* S.C. Code Ann. § 15-78-110 ("any action brought pursuant to this chapter is forever barred unless an action is commenced within two years after the date the loss was or should have been discovered") *with* § 15-78-120(a)(1) ("no person shall recover in any action or claim brought hereunder a sum exceeding three hundred thousand dollars because of loss arising from a single occurrence regardless of the number of agencies or political subdivisions involved"). None of the cases involving discussion of the SCTCA law of occurrences cited by USC involve the statute of limitations.

On the other hand, Johns cites a case that seems more analogous here. In *Marshall v. Dodds*, 827 S.E.2d 570, 576 (S.C. 2019), the South Carolina Supreme Court held, in a non-SCTCA tort case, when defendant medical providers failed to properly diagnose their patient's blood cancer over a series of treatment sessions, claims based on errors in the later sessions may proceed even if claims arising from the initial session would be untimely.

It reasoned, "[w]e fail to see the logic in preventing an aggrieved party from seeking redress for acts that occurred *within the repose period*." *Id.* The court then went on to opine its holding was consistent with South Carolina's rejection of the continuous tort doctrine. *Id.* at 577.

True, *Marshall* involves medical malpractice, and this case involves failure to advise by a psychologist. And, *Marshall* addressed the statute of repose, rather than the statute of limitations. Nevertheless, the Court determines the salient analysis from *Marshall* applies here.

The Court thus determines it failed to commit any clear error that would require reconsideration of its holding that if Johns disclosed Snyder's harassment to Collins on or after March 22, 2019, her claims are within the limitation period.

USC next posits the Court erred in determining a genuine issue of material fact exists as to whether Johns did so.

As the Court noted in its previous order, Johns's testimony regarding her disclosures to Collins lacks detail. But, she stated she discussed her relationship with Snyder multiple times with Collins. *See* Johns Deposition at 165:10–13 (answering "yes" to question of "[y]ou said you reported that you were being sexually harassed multiple times to Susan Collins; is that accurate?"); *Id.* at 174: 3–6 ("But what I consistently said was, it's almost impossible to get to campus and it is impossible to be here without having panic attacks and she knew about this harassment.").

True, she fails to specify any dates or sessions during which she disclosed the alleged harassment. But, what she provides is enough to survive summary judgment on this issue.

The Court thus determines it has failed to commit a clear error causing manifest injustice at the summary judgment stage of the case. Accordingly, the Court will refrain from granting USC's motion for reconsideration based on this argument.

### 2.     *Whether Collins owed Johns a duty under South Carolina law*

USC avers the Court improperly recognized a duty of a licensed psychologist to inform their patient of Title IX rights and resources. Johns counters USC continues to incorrectly rely on *Hendricks v. Clemson Univ.*, 578 S.E.2d 711 (S.C. 2003), which it maintains is distinguishable.

"The court must determine, as a matter of law, whether the law recognizes a particular duty. If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Hurst v. E. Coast Hockey League*, 637 S.E.2d 560, 562 (S.C. 2006).

"Generally, duty is defined as the obligation to conform to a particular standard of conduct toward another. A standard is a model accepted as correct by custom, consent, or authority. Foreseeability of injury, in and of itself, does *not* give rise to a duty." *Nelson v. Piggly Wiggly Cent., Inc.*, 701 S.E.2d 776, 781 (S.C. Ct. App. 2010) (citations omitted) (internal quotation marks omitted).

"The standard of care in a given case may be established and defined by the common law, statutes, administrative regulations, industry standards, or a defendant's own policies and guidelines." *Madison v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 659 (S.C. 2006).

USC points to *Hendricks*, 578 S.E.2d at 715, in which the South Carolina Supreme Court held an athletic-academic advisor's failure to properly advise a student-athlete of the academic requirements to play baseball failed to give rise to a duty in negligence. The Supreme Court likened the case to "inadequate education cases." *Id.*

But, although Johns does allege detriment to her education, the duty she alleges Collins had here is different than the plaintiff argued the defendant had in *Hendricks*. In this case, as the Court discussed in its previous order, Collins admitted, if a student advises her of sexual misconduct by a faculty member, it is her obligation to advise the student of their Title IX resources. And, under USC's of EOP policy, "confidential resources" are directed to ensure "a

7

complainant . . . understand[s] that Title IX includes protection against retaliation and that if the complainant pursues disciplinary action against the alleged offender, USC will take steps to prevent retaliation and take strong responsive action if any retaliation does occur." EOP Policy at 6.

Of course, Johns may fail to present sufficient evidence at trial showing Collins breached the applicable standard of care. *See David v. McLeod Reg'l Med. Ctr.*, 626 S.E.2d 1, 4 (S.C. 2006) ("The plaintiff must provide expert testimony to establish both the required standard of care and the defendants' failure to conform to that standard, unless the subject matter lies within the ambit of common knowledge so that no special learning is required to evaluate the conduct of the defendants.").

But, the Court again determines it has failed to commit a clear error causing manifest injustice at the summary judgment stage of the case. The Court will therefore deny the motion for reconsideration as to this argument, as well.

### 3. *Whether there is a genuine issue of material fact John would have acted differently had Collins informed her of her Title IX rights*

USC maintains the Court improperly credited argument in the briefing as evidence to determine there was a genuine issue of material fact as to whether Johns may have acted differently had she known of the anti-retaliation protections provided by Title IX. Johns counters USC asks the Court to refrain from making reasonable inferences in her favor.

In the Court's previous order, it held there is a genuine issue of material fact that, had Johns known of the anti-retaliation protections afforded by Title IX, she would have filed a claim and avoided much of her damages.

Johns testified she "actually searched how to file a Title IX claim at USC and the search results that [she] got were discouraging. [She] read the University's response to students and

realized that going to the Title IX office was not only going to be potentially unsafe if it angered Dr. Snyder, but would also be futile, useless." Johns Deposition at 176:20–177:2.

Although USC contends this is insufficient evidence to argue "that had Plaintiff known specifically about [anti-retaliation] protection that she would have reported Defendant Snyder[,]" USC's Reply at 7, the Court determines a reasonable jury could infer Johns would have made a Title IX claim if Collins had properly explained her rights to her. *See Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987) ("Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts.").

Consequently, the Court holds a jury should determine whether Johns would have made a Title IX claim had Collins advised her of her rights.

Therefore, the Court holds it has failed to commit a clear error causing manifest injustice at the summary judgment stage of the case. The Court will thus deny the motion for reconsideration as to this argument and uphold its denial of summary judgment as to Johns's negligent failure to advise claim against USC.

> **B.     Whether the Court should reconsider its denial of summary judgment as to Johns's breach of fiduciary duty claim against USC**
>
> **1.     Whether Johns's breach of fiduciary duty claim is barred by the statute of limitations**

For the same reasons the Court discussed above in relation to Johns's negligence claims, there is also a factual dispute over whether Johns filed her breach of fiduciary duty claim—which is also governed under the SCTCA act—within the limitations period. In short, a jury should determine whether Johns reported Snyder's alleged harassment within two years of commencing this action.

Accordingly, as the Court failed to commit a clear error causing manifest injustice, it will deny the motion to reconsider based on this argument, too.

### 2. *Whether Johns's prior knowledge of Title IX bars her breach of fiduciary duty cause of action*

Moreover, for the reasons the Court explained above, there is a genuine issue of material fact whether Johns's would have acted differently had she known about the anti-retaliation protections of Title IX. Therefore, in the absence of clear error causing manifest injustice, the Court will also deny the motion to reconsider based on this argument.

### 3. *Whether Collins's fiduciary duty to Johns included advising about Title IX*

USC avers the Court erred in holding Collins's fiduciary duty extends to assisting Johns in filing a Title IX claim. It posits the Court's ruling would mean all therapists in South Carolina would be required to advise their patients about Title IX protections. Johns, in turn, contends USC asks the Court to make improper inferences against her.

"[T]o determine whether a fiduciary relationship existed, [a] court must look to the particulars of the relationship between the parties." *Armstrong v. Collins*, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005).

The particular relationship between a student and her on-campus therapist is different from the relationship between an unaffiliated therapist and her unaffiliated client. Thus, USC's argument the scope of the fiduciary duty in the two circumstances would be the same is misguided.

Consequently, the Court determines it has failed to commit a clear error causing manifest injustice. The Court will therefore deny USC's motion for reconsideration as to this argument and this cause of action, too.

## V.  CONCLUSION

For the reasons stated above, it is the judgment of the Court USC's motion for reconsideration is **DENIED**.

This matter is **SET** for jury selection on **August 7, 2024**.  The parties shall be prepared to try this case during the August/September term of Court.  The Court is of the firm opinion, however, that excellent counsel in this matter will be able to resolve this case through settlement before that time.

 **IT IS SO ORDERED.**

Signed this 16th day of May 2024, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
